[Civ. No. 787.   Third Appellate District.—September 1, 1910.]

## ALFRED E. ROBERTS, Respondent, v. SIERRA RAILWAY COMPANY OF CALIFORNIA, Appellant.

Negligence — Injury to Passenger on Freight Train — Riding on Flat Car—Explosion of Powder-car—Assumption of Risk—Support of Finding.—In an action to recover for injury to plaintiff as a passenger on a freight train, for negligence of the defendant in causing the derailment and explosion of a car laden with dynamite, while plaintiff was riding on a flat car in the rear of such car as a passenger with defendant's permission, it is held that the

jury was warranted in finding from the evidence that the only risk assumed by plaintiff when obtaining such permission was that of falling from the flat car, and that he assumed no risk from the presence of the dynamite-car or from its negligent derailment and explosion, for which he was not at fault.

ID.—NEGLIGENT CAUSE OF EXPLOSION—DERAILING OF POWDER-CAR BY LOOSE SLABS—ROLL OF DERAILED CAR FROM CURVE—SUPPORT OF FINDING.—*Held*, that the evidence, though not conclusive, is sufficient to warrant the jury in finding that the negligent cause of the explosion was the falling of unsecured slabs on the end of the flat car against the powder-car which caused it to be derailed while on a curved track, from which it rolled partly down the hill, and that the resultant explosion thereby caused killed two workmen and seriously injured the plaintiff. It was gross negligence on the part of the defendant to expose the dynamite-car to such danger.

ID.—PRESUMPTION OF NEGLIGENCE—INJURY TO PASSENGER—PLEADING— SINGLE COUNT—GENERAL AND SPECIFIC NEGLIGENCE—ABSENCE OF DEMURRER—PROOF OF SPECIFIC ACTS.—Where the plaintiff, who was a passenger on defendant's car, pleaded negligence generally, he is entitled thereunder to a presumption of negligence from the fact of the injury to him while riding as such passenger. Where he pleaded both general and specific negligence in one count the burden is upon him to prove the specific acts of negligence alleged. Where such burden was sustained, he is still entitled to such presumption under the general averment of negligence. The objection that they were not pleaded in distinct counts is waived, where no demurrer was interposed on that ground.

ID.—ISSUES AS TO NEGLIGENCE—TRIAL WITHOUT OBJECTION—WAIVER— OBJECTION FOR FIRST TIME.—Where the averments as to specific and general negligence in one count were both specifically denied, and the cause was tried on the theory that both were alleged, and the evidence went in without objection touching the issues as thus presented, and defendant makes no pretense of having been surprised, and the verdict was for the plaintiff, the rule applies that "where parties without adhering closely to the written pleadings proceed without objection and make a particular case, and the court allows that case without objection to go to the jury, the case thus made cannot be assailed for the first time by the motion for a new trial on the assignment of error in the appellate court on the ground of the failure of proof."

ID.—RULE AS TO PLEADING AND PROOF—GENERAL AND SPECIFIC NEGLIGENCE.—The rule that where general allegations of negligence are followed by an enumeration of specific facts, the plaintiff will not be limited to proof of specific acts, unless the complaint clearly indicates the intention of the pleader to limit the negligence to such acts, must be deemed equally applicable where the specific acts precede the general negligence alleged.

ID.—INSTRUCTION AS TO PROOF—CAUSE OF DERAILMENT OF POWDER-CAR —PRESUMPTION OF NEGLIGENCE—BURDEN OF PROOF.—The court properly instructed the jury that the plaintiff was not required to prove how or why the car containing dynamite was derailed or overturned, if he was injured by its derailment or overturning. That the plaintiff was a passenger of the defendant, and that while he was riding on the car provided for him, he was injured by the derailment or overturning of a car containing dynamite, without his fault, is all the plaintiff need establish in the first instance, in order to recover for such injuries which may have been caused thereby. When the plaintiff has done this, the presumption arises that the derailment or overturning of the car containing dynamite occurred through the negligence of the defendant, and the burden of proving that there has been no negligence is cast upon the defendant.

ID.—INSTRUCTION—AFFIRMATIVE OF ISSUE.—The court properly instructed the jury: "In civil cases the affirmative of the issue must be proven. The affirmative of the issue in this case is upon the plaintiff. If the evidence is contradictory, the decision must be made according to the preponderance of the evidence. It is your duty, however, if possible, to reconcile such contradiction, if any there be, with testimony offered in the entire case, so as to make the evidence reveal the truth. If this cannot be accomplished and the evidence is so equally balanced in weight and quality that the scales of proof hang even, your verdict must be for the defendant." The defendant was not prejudiced by such instruction.

ID.—INSTRUCTIONS—RESPONSIBILITY OF CARRIERS OF PASSENGERS.—The court properly instructed the jury as to the duty and responsibility of carriers of passengers to exercise the highest degree of care for their safety, that it is the same where fare is paid on a wood, gravel or other car as for passengers on passenger cars; that the carrier is not an insurer of passengers, nor liable if injuries happen from sheer misfortune, without negligence or fault, but it is liable for the slightest negligence in itself or its servants.

ID.—RESPONSIBILITY OF CARRIER OF PASSENGER ON SPECIAL FREIGHT TRAINS.—Where the court further instructed the jury that "a passenger who applies for permission to ride upon a special freight train upon which he is informed there are no accommodations for passengers, if he takes passage upon such freight train after such information, assumes all of the extra risks necessarily incident to such train, provided thereafter the carrier uses such diligence and care as is required on usual passenger trains, so far as such care is reasonably consistent with the purpose for which the train is made up; and the highest degree of care consistent with the practical and common use of the appliances and cars on a freight train is exacted and required of a common carrier of persons in the transportation of passengers where fare is paid for such transportation,"

the instructions as to the responsibility of carrier of passengers read together meet every objection urged against them.

ID.—SPECIAL FREIGHT TRAIN NOT AFFECTING RESPONSIBILITY.—The fact that the train in question was a special freight train and not a regular passenger train did not affect defendant's responsibility as a carrier for hire under the express terms of section 483 of the Civil Code.

ID.—INSTRUCTION PROPERLY REFUSED.—The court properly refused a requested instruction that the rules regulating the duties and responsibilities of a common carrier "do not apply where the common carrier is not obliged by law to carry passengers, as in case of a special freight train made up for a special purpose," and that "as to said special train, in so far as plaintiff is concerned, the defendant was a private carrier, and the acceptance of said ticket did not change the defendant's character from a private carrier to a common carrier."

ID.—ERROR FAVORABLE TO APPELLANT.—An appellant cannot complain of an error committed in his favor in the giving of an instruction.

ID.—POWER OF CARRIER TO LIMIT RESPONSIBILITY BY CONTRACT.—The power of a carrier to limit the responsibility by special contract need not be considered where the only risk assumed by plaintiff by special contract had no relation to the accident causing the injury.

ID.—REQUEST PROPERLY REFUSED—CONTRIBUTORY NEGLIGENCE OF PLAINTIFF.—A requested instruction relative to the dynamite-car, that "if you believe from the evidence that plaintiff knew that that car was a part of said train, and of the dangerous and explosive character of dynamite, and of its liability to explode without any apparent cause or from sudden jar or jolt, if from the evidence you believe that it was so liable, he was guilty of such negligence when he undertook to ride upon such special freight train, that it contributed proximately to his injuries, and he cannot recover even though you believe from the evidence that the said explosion was proximately occasioned by the negligence of the defendant," was properly refused.

ID.—NEGLIGENT DERAILMENT OF CAR—PLAINTIFF NOT CONTRIBUTING.—It is not claimed that plaintiff contributed in any way to the derailment of the powder-car other than his mere presence on the flat car, with defendant's consent. In all human probability, the explosion would not have occurred but for the derailment of such car; and if this was caused by defendant's negligence, we cannot hold defendant free from liability for alleged negligence of plaintiff in riding on the train.

ID.—REFUSAL OF REQUESTED INSTRUCTION—BREAKING OF AXLE OF POWDER-CAR—NEGLIGENCE IGNORED—UNCERTAINTY OF TIME OR CAUSE.—A requested instruction that "If you believe from the evidence that the explosion was occasioned from the sudden breaking of the front

axle of the car containing said dynamite, and that the said break-ing was caused by some hidden defect in said axle, the defendant cannot be charged with negligence. If you believe from the evidence that the defendant, at the time he received the car upon its road, carefully examined said car and axle without finding any defect in said axle, and that such defect was at the time of such exam-ination so hidden as not to be apparent to such a careful examina-tion, then your verdict should be for the defendant," was properly refused, where it ignores the evidence of negligence in allowing loose slabs to fall upon and derail the car, and no negligence is claimed from the operation of a defective car; and there is no degree of certainty when such axle was broken, which might have occurred after the negligent derailment of the car on the curve, or might have been caused by the explosion.

ID.—INSTRUCTIONS NOT CONTRADICTORY—PRESUMPTION OF NEGLIGENCE FROM DERAILMENT—ABSENCE OF PRESUMPTION FROM EXPLOSION.— Instructions given at the request of plaintiff that plaintiff was en-titled to the presumption of negligence upon proving the derail-ment of the powder-car and the injuries to him, are not contradictory to an instruction given at defendant's request that no presumption of negligence of the defendant arises from the explosion and the resulting injuries to the plaintiff therefrom.

APPEAL from a judgment of the Superior Court of Cala-veras County, and from an order denying a new trial. A. I. McSorley, Judge.

The facts are stated in the opinion of the court.

Solinsky & Wehe, John Hancock, and S. D. Woods, for Ap-pellant.

Cushing, Grant & Cushing, and Snyder & Snyder, for Re-spondent.

CHIPMAN, P. J.—This is an action to recover for personal injuries suffered by plaintiff while a passenger upon defend-ant's cars. The cause was tried by a jury and plaintiff had a verdict for $5,760, on which judgment was entered accord-ingly. Defendant appeals from the judgment and from the order denying its motion for a new trial.

The complaint alleges that defendant was, at the times therein mentioned, operating a steam railway for the car-riage of passengers and freight for hire, between the town of

Tuolumne and the town of Jamestown in Tuolumne county, and also between Jamestown and the town of Angels in the county of Calaveras, and during all said times defendant was and now is a common carrier of persons and freight for hire; that on June 26, 1906, defendant received plaintiff as a passenger on its said railway at the town of Tuolumne and, in consideration of the regular fare paid by plaintiff, the said defendant agreed to transport plaintiff as a passenger over its said lines from said Tuolumne to said Angels by way of said Jamestown; that plaintiff boarded the train of defendant at Tuolumne and proceeded to Jamestown and, on his said ticket purchased at Tuolumne, again boarded the train of defendant at Jamestown and was received as a passenger thereon by defendant for the purpose of transporting him to said town of Angels. "That the railway train upon which said defendant so received plaintiff as a passenger at Jamestown consisted of a locomotive propelled by steam and numerous cars, and there was included in said train on said day a car containing a large amount, to wit: Ten tons, or thereabouts, of dynamite. That said train, so constituted as aforesaid, proceeded on its way from Jamestown to Angels, with said plaintiff thereon as a passenger, while between said points aforesaid, and while within said county of Calaveras, and while plaintiff was riding thereon as such passenger, said defendant carelessly and negligently allowed its railway track upon which said train was running to become obstructed, and said defendant carelessly and negligently allowed certain obstructions to fall or become placed thereon, and so negligently and carelessly managed and operated its said locomotive and train that a portion of said train, to wit, several cars thereof, including said carload of dynamite, became and were, on said day last aforesaid, wholly derailed. That by reason of the derailment of said cars and the concussion caused thereby, said carload of dynamite was instantly exploded and by reason thereof a violent explosion occurred. That said derailment and explosion occurred without any fault on the part of said plaintiff." The remaining averments of the complaint relate to the character and extent of plaintiff's said injuries "by reason of the derailment of said train and of said explosion"; the destruction and loss of his clothing and baggage; expenses incurred in employing medical attendance, etc.

A general demurrer to the complaint was interposed and·
also a special demurrer on the ground that there is a mis-
joinder of actions in that there is a cause of action for injuries
to the person of plaintiff, also for damages sustained by loss
of personal effects; also that the complaint is ambiguous and
uncertain in not alleging the value of said personal effects.
No action seems to have been taken on the demurrer and it
is not now urged. Defendant filed an amended answer admit-
ting the averments of the complaint as to plaintiff's purchase
of ticket for passage from Tuolumne to Angels, but avers that
the said transportation was to be only by way of the regular
passenger trains of defendant; that the regular passenger
train from Jamestown to Angels did not leave Jamestown
until late in the afternoon, and plaintiff, having arrived in
the forenoon and being desirous of proceeding without delay,
importuned defendant to transport him by a special freight
train that was then being made up and which among other
cars included one which contained fifteen tons of dynamite;
that defendant, by its superintendent, endeavored to dissuade
plaintiff from going on that train and informed him of the
danger by reason of its having in the train said car of ex-
plosives, but finally yielded to plaintiff's solicitations after
plaintiff had agreed to assume all dangers of said transporta-
tion and it is averred that plaintiff did so agree and boarded
said special train and became a passenger thereon under said
agreement and not otherwise. Defendant further avers "that
the said explosion occurred without any fault or negligence
on its part whatsoever, and that the same was an accident be-
yond the control of the said defendant and which it could not
with reasonable care and diligence have provided against";
and that any damage suffered by plaintiff was the result
of his own carelessness and negligence directly contributing
thereto. Defendant also sets up as a special defense that
plaintiff became a passenger upon said special freight train
under an agreement that if allowed to be transported there-
upon he would assume all the dangers connected therewith
and would relieve defendant from all liability of every kind
and character connected with plaintiff's transportation upon
said special freight train and the said agreement was in force
at the time of said explosion.

Plaintiff was a civil engineer and was in the pursuit of his profession when he took passage upon defendant's cars. He testified that he purchased a ticket- at Tuolumne for passage to Angels; that he arrived at Jamestown in the forenoon and learned from a nearby bartender, one Reed, that the regular passenger train to Angels did not leave until late in the afternoon; being anxious to reach Angels and being told that a special freight train was being made up, he went to the superintendent, Mr. Blanton, whom Mr. Reed had pointed out, and after stating his anxiety to get on in his journey was told that he might ride on that train. The train consisted of five cars besides the engine; first an oil-car, second a flat car loaded with a traction engine and other machinery, third a flat car on which were one or two cords of saw-mill slabs, fourth a box-car loaded with dynamite powder, and fifth, a flat car on which plaintiff and two other men sat.

It was claimed by defendant, as disclosed in the answer, that plaintiff assumed the risks of every kind, including that arising from the presence of the car loaded with powder. Bartender Reed testified that plaintiff had told him that the superintendent had called his, plaintiff's, attention to this powder-car and plaintiff said he would take any risk from that. Plaintiff testified that he made no such statement and that he saw no placard on the car showing that it contained powder. On his cross-examination upon this point plaintiff testified: "I made one trip back to the barkeeper and told the barkeeper that the superintendent had consented to my going, but that I would have to ride on a flat car, and that he questioned me closely as to my ability to ride on that flat car, and I assured him that I would not fall off. Then he says, the superintendent told me then that there is more or less danger riding on a flat car, and that if I would take the chances of it, riding on a flat car, all right I could go.

"Mr. Wehe: Q. Wasn't anything said at all about riding at your own risk? A. Riding on a flat car at my risk, yes. Q. He did say you must ride on that flat car at your own risk? A. Yes, in view of the fact that there was no accommodation, no caboose accommodations. Q. That is what I am trying to get at. Then he did say you must ride on that flat car at your own risk? A. Yes; risk of falling off, of course, is referred to—meant.

"Mr. Wehe: Q. Now, you are sure, are you, Mr. Blanton didn't say anything to you about powder-car? A. He certainly did not."

Superintendent Blanton testified on cross-examination as follows: "Q. Now Mr. Blanton, coming back to the matter of the conversation between yourself and Mr. Roberts at Jamestown on the morning of the accident, you said to Mr. Roberts, I understood you to say in your testimony that you had no place for him on that train, and you advised him not to go. What did you mean by saying that you had no place for him? A. We never carried passengers in all my experience on a train of that kind. There was no place where he could ride safely. Q. There was no caboose, no seat, no place where he could safely ride? A. No place I considered it was safe. Q. You considered it would not be safe for him on an open car? A. Yes, sir. Q. What you meant by your suggestion was, it was not safe for any passenger to ride on any flat, open car without any regard to powder? A. Yes, sir. I was going to place him on a different car altogether. I was going to put him on the inside with the machinery. Q. It was because you feared that he would fall off that you advised him not to go on the train; that was the idea? A. That was the principal idea. Q. Did you say anything as to the powder at all? A. I think we spoke about it. I don't recollect. Q. You won't say that you did? A. No. Q. That was not the reason you advised him not to go on the train, on account of the powder? A. No, I didn't think the powder was going to explode, of course. Q. Do you, of your own knowledge, know that there was a sign on this car indicating that it was a powder-car? A. Yes, I remember seeing it on one side. I don't remember whether it was on the other side or not; on the side next to the station there was a sign—the usual placard. Q. What did the train crew consist of on this morning? A. The engineer, fireman, conductor and two brakesmen. Q. Did the conductor tell you that he had placed Mr. Roberts on the rear car? A. He told me he would do so and I saw him there afterward."

The evidence fully justified the jury in finding that plaintiff did not, in his conversation with superintendent Blanton. assume any risk beyond what he testified to.

Conductor Hawkins testified: ''Mr. Blanton was the super-intendent of the railroad at that time. Received from Mr. Blanton before the train pulled out that morning instructions to take on the train Mr. Roberts, the plaintiff; directed the plaintiff to a place on the train, on the flat car in the rear of the powder-car. . . . This car containing the slabs was right next forward of the car containing the powder. They were refuse of logs sawed off, of different lengths, I presume twenty inches to two feet, and they were lying on this flat car in front of the powder-car. The car upon which these slabs were lying had nothing on the end to protect the slabs from falling off. I wouldn't be positive about the sides. I don't think they had any on the sides. . . . The slabs were on the bottom of the flat car from one end to the other at least about two feet from the rear end. That was the position they were in when the train pulled out of Jamestown. Some of them were piled and some loose, wasn't very particu-larly piled, just thrown on loosely.'' On further cross-exam-ination witness testified there were about two cords of slabs on the car.

Witness Demarest testified: ''I saw the marks of the flanges on the ties, of the wheels there. I saw slabs on the car and on the track; saw a wheel mark on one of them; the same kind of an impression as I saw on the ties; don't know the quantity of slabs on the car; would not know how to express it in cords; the slabs were scattered over the flat car on the bottom; would not know how much it would make if they were piled up. Q. By Mr. Grant: Quite a lot, were there? A. Wasn't so very many; they were covering the bottom of the flat car. Q. Some toward the end of the car? A. Yes, I think they were pretty well scattered over the bottom of the car. I didn't see any sideboards; I saw some stakes in the clips on the sides; didn't see any boards at the end of the car; looked all around, was desirous of ascertaining the cause of the accident.'' On cross-examination witness testi-fied: ''Could not say positively where the wheel mark was; do not remember whether it went across or lengthwise of the slab; I remember seeing the wheel marks on the slab; the marks on the ties were at the point of explosion, about there; our going over there was purely a matter of curiosity.''

Witness Monteverdi testified: "Observed an excavation caused by the explosion about fifteen or sixteen feet below the tracks; wasn't between the rails, below the track on the down side of the canyon; the track was raised up from the bed a little, the ties were still attached to the rails; the ties had the appearance of the flange of a wheel jumping from one tie to another right at the point of explosion; observed slabs of wood at that point; they were outside pieces sawed off of round timber, they were kind of rounding—wedge shaped—on one side, and on the other flat; they were about three feet or so long; some I guess were from an inch and a half to four or five inches at the half circle point. I observed the imprint of a flange of a wheel on some of these slabs that were at this point on the track; saw the plaintiff, Mr. Roberts, there at that time; had known him some time before that; did not speak to him, he did not recognize me; saw a man lying down there dead; saw a flat car there with slabs on it; the slabs were of a similar character to the slabs I saw the imprint of the wheel on; to the best of my knowledge I believe there was no tail-board to the car to restrain the slabs from falling off; the slabs were thrown on loosely; some were near the end of the car."

From Jamestown the grade descended to the Stanislaus river and thence it was upgrade to and beyond a point where the accident occurred called "Gee Whiz Point," an elevation of about one thousand feet above the river crossing. The grade was ascending here, as testified by superintendent Blanton, and just before the explosion the train had rounded a curve of twelve to sixteen degrees.

Conductor Hawkins was on the flat car containing the machinery. He testified: "I thought the train was going kind of slow and I was going to step off the car and see if there was any brakes stuck, air stuck, as we usually, of course, have a half dozen or dozen times over the road. I got to the front end of the machinery car and I looked down to see if the oil-car was sticking first, and then I was in the act of just going to swing around and jump off and was getting in kind of a side position, with my back to the canyon, to the precipice you might call it, and I had hold of the machinery with my both hands. I happened to look back and I saw the powder-car off the track. When it left the rail it curved out to the

end of the ties and it had gone for a short distance before it
dropped off the end of the ties and started to roll over, and
I seen the boys on the rear car, of the flat car behind run-
ning toward the rear end for their life, and just about the
time they got to the rear end and tried to make the fatal
jump to get off, the flat car had disconnected from the
powder-car and kind of flopped back on the track, and the
box-car rolled, and just about the time it made a roll, only
about a revolution, one revolution, it was all off. The ex-
plosion took place. It fell over on the side, just about making
one turn so that the top was almost down where the bottom
was before, and then the explosion occurred.''

The evidence was that both of the men on the flat car with
plaintiff were killed and plaintiff's injuries were of a severe
and permanent character. Other witnesses testified to the
fact that the powder-car left the track and turned partly over
down the hillside before it exploded, and there was evidence
tending to show that some of the slabs fell from the flat car
next in front of the powder-car, and the trucks of the latter
car coming in contact with them were thrown off the track
and thus caused the accident. The evidence upon this point
cannot be said to be conclusive, but the known facts and cer-
tain circumstances, such as the markings of the truck wheels
on the slabs and that the powder-car was the first to leave
the track, as testified to, pointed to the falling slabs as the
cause of the accident, which would have been averted had
the slabs on the flat car been secured in some way from fall-
ing off, which admittedly was not done. It was gross neg-
ligence on the part of defendant to expose this powder-car
to such danger, and as there was evidence tending to show
that the derailing and explosion of the powder-car was trace-
able to such negligence of the defendant, we think the plain-
tiff was not called upon to make clearer proof of this fact,
aside from any presumption of defendant's negligence as the
cause of the accident.

In an eighty-six page brief defendant devotes one page to
the proposition that the evidence does not sufficiently show
that the accident was caused by the falling of these slabs.
No evidence seriously conflicting with that introduced by
plaintiff is called to our attention, and no suggestion is made

which leads us to doubt the sufficiency of the evidence to support the verdict upon this point.

The stress of defendant's argument for a reversal is laid upon questions of law arising out of the pleadings and alleged errors in giving and refusing instructions to the jury, and to this branch of the case we will now address ourselves. Defendant makes the concession "that in damage cases of this character the plaintiff, upon proper allegations of general negligence, is entitled to a presumption of negligence," but it is claimed that "he is not entitled to such presumption of negligence where the allegations are of acts of specific negligence." *Valente* v. *Sierra Ry. Co.*, 151 Cal. 534, [91 Pac. 481], and *Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406, [125 Am. St. Rep. 68, 93 Pac. 106], are cited as stating the rule where general negligence is averred, but cases are cited to show that no such presumption arises where specific acts are alleged, even though general negligence is alleged. To the soundness of this latter proposition we cannot agree. If it be the rule that where specific acts of negligence are alleged as the cause of the accident, the burden is upon the plaintiff to prove his averments, we think he satisfactorily sustained such burden and that the evidence was sufficient to justify the inference that the acts of negligence averred and proved were the cause of the accident. Plaintiff, however, not only alleged specific acts of negligence, but he also alleged general negligence. It is true that he did not set up his alleged specific and general negligence in separate counts, as was done in *Green* v. *Pacific Lumber Co.*, 130 Cal. 439, [62 Pac. 747], but there was no demurrer addressed to this feature of the complaint; the averments of the complaint were specifically denied, the evidence went in without objection touching the issues as thus presented, and defendant makes no pretense of being surprised.

Inasmuch as there was an issue of general negligence presented, a presumption of negligence arose upon proof made of plaintiff's injury while a passenger on defendant's cars. And the case was tried upon the theory that both specific and general negligence was alleged, for defendant introduced evidence for the purpose, first, of showing that the powder-car was not derailed by the falling slabs, and second, by showing that the accident occurred through no preventable cause and

"without any fault or negligence" on defendant's part, and "beyond the control of said defendant, and which it could not with reasonable care and diligence have provided against," as alleged in the answer.

"Where parties, without adhering closely to the written pleadings, proceed without objection and make a particular case by the evidence, and the court allows that case without objection to go to the jury, it is a violation of all correct rules of law then to assail the case thus made for the first time by the motion for a new trial on the assignment of error in the appellate court on the ground of failure of proof. Such a procedure works fraud upon the opposite party and there is no authority for it outside of Missouri." (6 Thompson on Negligence, sec. 7473.) This author further says, in speaking of the general rule in pleading negligence, that "ultimate facts only are to be pleaded, and it is not good pleading to plead matters of evidence." Further he says: "If the pleading fairly informs the opposite party of what he is called upon to meet, and the specific acts of negligence are followed by a general statement that the acts were negligently done; or if it fails to state the acts particularly and the opposite party nevertheless fails to claim a surprise or take the necessary steps to extricate himself from the difficulty, there ought not to be much trouble about the question." (6 Thompson on Negligence, sec. 7447.) It has been held, and we think rightly, that where general allegations of negligence are followed by an enumeration of specific facts, the plaintiff will not be confined to proof of specific acts, unless the complaint clearly indicates the intention of the pleader to limit the negligence to such acts, and the rule, we think, should be equally applicable where the specific acts pleaded precede the general negligence alleged. (*United States Exp. Co.* v. *Wahl*, 168 Fed. 851; *Traver* v. *Spokane St. Ry. Co.*, 25 Wash. 225, [65 Pac. 284, 291].)

The discussion of the question arises under instructions of the court, to which defendant objects, to the effect that plaintiff was not required to prove how or why the car containing dynamite was derailed or overturned, if he was injured by its derailment or overturning. "That the plaintiff was a passenger of the defendant, and that while he was riding on the car provided for him he was injured by the derailment or

overturning of a car containing dynamite, without his fault, is all the plaintiff need establish in the first instance, in order to recover for such injuries which may have been caused him thereby. When the plaintiff has done this, the presumption arises that the derailment or overturning of the car containing dynamite occurred through the negligence of defendant, and the burden of proving that there has been no negligence is cast upon the defendant.'' The contention that this was error, for the reason that plaintiff had pleaded specific acts of negligence, cannot be maintained. Plaintiff submitted evidence tending to establish his averments of specific negligence, and he was entitled to rely upon this presumption under his averments of general negligence. Defendant offered evidence to explain the cause of the derailment of the dynamite-car and to show that it was not due to any want of care or foresight or operation of the train on its part. This evidence consisted mainly of the fact that one of the truck axles of the powder-car was found, some distance from the scene of the explosion, broken off at the wheel, and this, it was claimed, caused the wheel to leave the track. It appeared that this car was shattered into fragments but few of which were ever found, and that the downward effect of the powder excavated a large hole in the mountain side below the track, the latter being but little affected thereby. It could not be stated with any degree of certainty whether the breaking of the truck axle occurred before the derailment of the car or was caused by the explosion; and it appeared that the breaking of one axle at one wheel would not necessarily cause the car to leave the track immediately, for the bearings on the truck were such as that the other wheels would support the load and hold the car on the track for some distance. There was, we think, a failure on defendant's part to show that it was free from fault, and it is not claimed that plaintiff was in any degree guilty of contributory negligence except in riding upon the train thus endangered, which is a matter later to be noticed.

The court instructed the jury: ''In civil cases the affirmative of the issue must be proven. The affirmative of the issue in this case is upon the plaintiff. If the evidence is contradictory, the decision must be made according to a preponderance of the evidence.'' Without quoting further, defendant

complains that this is in violation of the rule "that the defendant is not required to rebut plaintiff's case by a preponderance of the evidence." (Citing *Mitchell* v. *Southern Pac. Ry. Co.*, 87 Cal. 62, [25 Pac. 245].) But the court further instructed the jury in the same connection: "It is your duty, however, if possible, to reconcile such contradictions, if any there be, in the testimony offered in the entire case, so as to make the evidence reveal the truth. If this cannot be accomplished and the evidence is so equally balanced in weight and quality that the scales of proof hang even, your verdict should be for the defendant." This is equivalent to saying that "if the evidence is equally balanced," which is the expression used in the case cited.

The court instructed the jury that "it is the duty of a carrier of passengers by rail to furnish its passengers a suitable and safe road and to safely operate its trains upon which it carries its passengers, and in the performance of these duties it is required to exercise the highest degree of care," and that "when fare is taken by a railway company for transporting passengers on any passenger, wood, gravel, or other car, the same care must be taken and the same responsibilities assumed by the defendant corporation as for passengers on passenger cars." The court added: "The carrier, however, is not an insurer of its passengers. Its undertaking to its passengers is simply that, so far as human care and foresight can reasonably go, it will transport them safely. It is not liable if injuries happen from sheer accident or misfortune where there is no negligence or fault, or where no want of caution, foresight, or judgment would prevent the injury. But it is liable for the smallest negligence in itself or its servants." At defendant's request the court instructed the jury as follows: "A passenger who applies for permission to ride upon a special freight train upon which he is informed there are no accommodations for passengers, if he takes passage upon such train after such information, he assumes all of the extra risks necessarily incident to such train, provided thereafter the carrier uses such diligence and care as is required on usual passenger trains so far as such care is reasonably consistent with the purposes for which such train is made up" (to which the court added), "and the highest degree of care consistent with the practical and common use of the ap-

pliances and cars on a freight train is exacted and required of a common carrier of persons in the transportation of passengers when fare is taken for such transportation." When these instructions are read together they meet every objection made by defendant. It is conceded that the law requires the exercise of the highest degree of care by the transportation company, but it is said that the instruction quoted in defendant's brief omits the condition that the carrier is required to use only such care as may be "consistent with the practical operation of the road." But the court covered this very point in its instructions seemingly overlooked by defendant.

The Civil Code, section 2100, requires that "A carrier of persons for reward must use the utmost care and diligence for their safe arrival, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

The supreme court said in *Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406, 409, [125 Am. St. Rep. 68, 93 Pac. 106]: "A carrier of passengers is held to the exercise of the highest degree of care for their safety and transportation, and is liable for any injury sustained by them in the course of transportation through failure to exercise such care."

That the train in question was a special freight train and not a regular passenger train did not affect defendant's responsibility as a carrier for hire. (*Green* v. *Pacific Lumber Co.*, 130 Cal. 441, [62 Pac. 747].) See, also, section 483, Civil Code, expressly covering this point.

The court refused an instruction requested by defendant which, after stating the duties and responsibilities of a common carrier engaged in carrying passengers by regular passenger or freight trains, proceeds to state that these rules "do not apply where the common carrier is not obliged by law to carry passengers, as in the case of a special freight train made up for a special purpose"; and thereafter stating that defendant was not bound to receive plaintiff as a passenger, the instruction states, "for as to said special freight train, in so far as plaintiff was concerned, the defendant was a private carrier, and the acceptance of said ticket did not change the defendant's character from a private carrier to a common carrier."

Section 2168 of the Civil Code declares: "Everyone who offers to the public to carry persons, property or messages, except only telegraphic messages, is a common carrier of whatever he thus offers to carry." And "a common carrier cannot be exonerated by any agreement, made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants." (Civ. Code, sec. 2175.) Furthermore, as already shown, section 483 of the same code provides that when fare is taken for transporting passengers on any freight train, the same responsibility is assumed as for passengers on a passenger car. We think the court very properly refused to give the instruction.

Defendant contends, under section 2174, Civil Code, it could limit its responsibility "by special contract," criticising the apparently contrary view expressed in *Pierce* v. *Southern Pac. Co.*, 120 Cal. 156, [47 Pac. 874, 52 Pac. 302]. It is not necessary to discuss the point, for the evidence was that the only risk assumed by plaintiff had no relation to the accident causing his injury. Furthermore, the court, at defendant's request, gave an instruction under section 483 of the Civil Code to the effect that if, as a condition precedent to riding upon a car such as referred to in the code section, "the railroad demands from the passenger that he assume all dangers and release the railroad company from all liability, it has a right, except for gross negligence, willful wrong or fraud, so to do, and in no such case is a passenger entitled to ride except upon such condition demanded by the railroad company." Defendant, then, in less objectionable phrase, but quite to its purpose, got an instruction covering what it was aiming at, and if the instruction went too far it was in defendant's interest and cannot now be made the subject of complaint by it.

Defendant was refused the following instruction: "The plaintiff has alleged in his complaint that the said special train at said time included a car containing ten tons of dynamite, and it is in evidence before you that said car contained fifteen tons, and if you believe from the evidence that the plaintiff knew that this car was a part of said train and of the dangerous and explosive character of said dynamite and of its liability to explode without any apparent cause, or from sudden jar or jolt, if from the evidence you believe that it was so liable, he was guilty of such negligence when he undertook to

ride upon such special freight train that it contributed proximately to his injuries and he cannot recover even though you believe from the evidence that the said explosion was proximately occasioned by the negligence of the defendant; for a person cannot negligently expose himself to possible injury and recover for such injury when suffered, even though the injury was occasioned by the negligence of another.''

The cases cited by defendant are instances where the plaintiff contributed directly by his own act to his injury; such as alighting from a car; heedlessly standing on the street where cars or vehicles were accustomed to pass. Plaintiff may have known of the presence of the dynamite-car in that train and that ''it was liable to explode without any apparent cause or from sudden jar or jolt,'' and may have taken the risks of an explosion from some such cause, but he certainly cannot be presumed to have taken the risk of an explosion ''proximately occasioned by the neglect of defendant,'' as is assumed in the instruction. It is not claimed that plaintiff contributed to the derailment of the car except by his presence on the flat car, and this with defendant's consent. We cannot agree with defendant's suggestion that plaintiff was guilty of contributory negligence by voluntarily riding on the train, and that he could and should have avoided his injury by remaining at Jamestown. Plaintiff, according to Superintendent Blanton's testimony, was ''not advised not to go on that train on account of the powder.'' Blanton said he ''didn't think the powder was going to explode, of course.'' In all human probability the explosion would not have occurred but for the derailment of the car, and if this was caused by defendant's negligence we cannot hold defendant free from liability on the ground that plaintiff's injury was caused by his alleged contributory negligence in riding on the train.

Error is claimed for refusing an instruction referring to the evidence tending to show the sudden breaking of the axle of the powder-car and stating: ''The defendant cannot be charged with negligence if you believe from the evidence that the defendant, at the time it received the car upon its road, carefully examined the said car and the said axle without finding any defect in said axle, and that such defect was at the time of such examination so hidden as not to be apparent to such careful examination, then your verdict

should be for the defendant." It is claimed that the rule is thus stated in *McCall* v. *Pacific Mail S. S. Co.,* 123 Cal. 42, [55 Pac. 706]. Where it appears that the injury results from some latent defect in machinery, which defect was not discernible upon careful examination by the owners and operators of the machinery, the rule appears to be as claimed by defendant and stated in the case cited. But here the negligence shown was not in operating a defective car but in loading and operating the train in a negligent manner. The instruction confines the issue to the condition of the axle of the powder-car and ignores other acts of negligence, such as so loading the flat car next ahead of the powder-car as to allow the slabs to fall and derail the powder-car. We see no error in refusing this instruction.

It is further contended that the instructions given at the request of plaintiff that plaintiff was entitled to the presumption of negligence upon proving the derailment of the cars and the injuries to him, are contradictory of the instruction given at the request of defendant as follows: "It is undisputed in this action that on the twenty-sixth day of June, 1906, while plaintiff, upon his paying fare therefor, was riding upon a special freight train of the defendant, made up for that occasion only, between the town of Jamestown in Tuolumne county, and the town of Angels in Calaveras county, an explosion occurred upon said train, and that thereby plaintiff was thrown to the ground from said train and in some degree injured. I charge you that no presumption of negligence on the part of said defendant in any way whatsoever arises from the said explosion and any resulting injuries to the said plaintiff therefrom."

We can discover no contradiction in these instructions. The presumption which the court stated plaintiff was entitled to was a presumption of negligence upon proving the "*derailment* of the car," not its "*explosion.*" The distinction is obvious.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 31, 1910.

Beatty, C. J., dissented from the order denying a hearing in the supreme court, and filed the following opinion thereon:

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause.

The trial court erred in refusing to give instruction No. 11, referred to in the opinion of the district court of appeal. As requested it reads as follows:

"If you believe from the evidence that the explosion was occasioned from the sudden breaking of the front axle of the car containing the said dynamite, and that the said breaking was occasioned by some hidden defect in such axle, the defendant cannot be charged with negligence, if you believe from the evidence that the defendant, at the time it received the car upon its road, carefully examined the said car and the said axle without finding any defect in said axle, and that such defect was at the time of such examination so hidden as not to be apparent to such a careful examination, then your verdict should be for the defendant."

This instruction presented the sole and entire defense to the action, and there was evidence to sustain the hypothesis upon which it was based, viz., a careful examination of the car at the time defendant received it upon its road (which was the day before the accident). The defendant had a right to invoke a finding of the jury upon this, its sole defense on the merits, and if the finding had been in its favor it was entitled to a verdict. (*McCall* v. *Pacific Mail S. S. Co.*, 123 Cal. 42, [55 Pac. 706].)