[Sac. No. 2331.    Department Two.—June 6, 1917.]

HILDA RYSTINKI, Respondent, v. CENTRAL CALIFORNIA TRACTION COMPANY (a Corporation), Appellant.

NEGLIGENCE—INJURY TO PASSENGER ON STREET-CAR—WAIVER OF MOTION TO DISMISS AS TO ABANDONED CAUSE OF ACTION.—Where a cause of action for personal injuries resulting to a passenger on an electric street-car by being thrown therefrom is set up in two counts, the first of which ascribed the injury to the sudden starting of the car while the plaintiff was endeavoring to alight, and the second of which attributed it to the defective condition of the roadbed, which caused the car to jerk and swing, and the plaintiff at the trial elects to rely upon the second count, a motion by the defendant to dismiss as to the first count, on which the court reserved its ruling, is waived unless renewed before the close of the trial.

Id.—Imperfect Condition of Track and Roadbed—Instructions as to
Operation of Car.—Where such case was tried upon the theory,
not that defendant's servants caused plaintiff's fall from the car
by the negligent starting of the car but that she was precipitated
to the ground by its movement from side to side in consequence of
the imperfect condition of the track and roadbed, instructions rela-
tive to the duty of a corporation in operating its cars did not tend
to mislead the jury.

Id. — Impeachment of Witness as to Immaterial Statement —
Striking Out Testimony. — Error in permitting the plaintiff to
impeach her own witness with respect to immaterial statements
made by him tending to show that the conductor of the car was
neglecting his duty shortly before the happening of the accident is
cured by the subsequent action of the court in striking out such
impeaching testimony and in instructing the jury to disregard it.

Id. — Where Party may Impeach Own Witness. — Where a witness
called by a party has simply failed to testify as expected, it is not
permissible for the party calling him to prove that he had previ-
ously made statements which if sworn to at the trial would tend to
support the case of the proponent of the witness. In order to
justify such impeachment the witness must give testimony against
the party calling him.

Id.—Instructions—Duty of Common Carriers of Passengers.—In
such case, an instruction to the jury that "common carriers of pas-
sengers bind themselves to carry safely those whom they take into
their cars, so far as human care and foresight will do so; that is,
with the utmost care and vigilance of a very cautious person; and
such carriers are responsible for any, even the slightest, negli-
gence," construed with an instruction immediately preceding in
which the jury were informed that such carriers are required to do
all that human care, vigilance, and foresight "reasonably can do
under all the circumstances" to prevent accidents to passengers,
correctly states the law.

Id.—Duty of Carrier in Operation of Car.—In such action, where
the gist of the averred negligence was the defendant's operation of
its car over a track so rough and unsuitable that plaintiff, a pas-
senger, was thrown and injured, it was proper to instruct the jury
touching the duty of a common carrier in the operation of its cars.

Id.—Contributory Negligence—Passenger Preparing to Alight Be-
fore Reaching Destination. — Where the undisputed evidence
showed that the plaintiff arose from her seat and prepared to alight
from the car before reaching her destination, it was proper to in-
struct the jury that it was no defense to the action "that the plain-
tiff by her own act contributed to the injury; it must appear
that by her own fault she has so contributed," followed by a state-
ment of the rule requiring of a passenger only ordinary prudence.

Id.—Res Ipsa Loquitur—Injury Coincident With Unusual Happen-
ing to Car.—Mere injury to the passenger does not place upon the

carrier the duty of explanation, but the establishment of such injury, coupled with proof of coincident and causal collision, derailment, or other unusual happening to the car, does cast upon the carrier the burden of exculpation.

Id.—Instructions as to Measure of Damages.—In such action it was proper to instruct the jury with respect to the measure of damages, in the form approved in *Ryan* v. *Oakland Gas Light & Heat Co.*, 21 Cal. App. 14, and to give the further instruction that "the law does not prescribe any fixed or definite rule of damages, but leaves this assessment to the common sense and unbiased judgment of the jurors."

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

Butler & Swisler, for Appellant.

Welsh & Henry, for Respondent.

MELVIN, J.—Plaintiff sued for damages for personal injuries received as alleged by being thrown from one of the electric street-cars of defendant upon which she was traveling as a passenger. Judgment for five thousand dollars was awarded and defendant has taken this appeal therefrom.

The plaintiff sought to plead her cause of action in two counts of the second amended complaint, by the first of which her fall from the car and the consequent bodily injury were ascribed to the sudden starting and putting in violent motion the car from which plaintiff was about to alight, without giving her sufficient time to reach the ground safely. By the second count it was alleged, in substance, that plaintiff was thrown from the car and injured by reason of the operation of said car over a defective track and roadbed, which caused it to "jerk and swing and sway back and forth." This part of the pleading was unsuccessfully attacked by general and special demurrers, and the court's rulings thereon are assigned as errors by appellant upon the ground that it does not appear that plaintiff was thrown from the car by reason of the negligence set forth; that there is no announcement of any causal connection between defendant's negligent maintenance of a defective track and roadbed and the violent throwing of plaintiff to the ground. While the pleading might be made clearer, we think it does sufficiently set forth the man-

ner of the injury and the negligence of defendant as the causative element thereof. The defective state of the track and roadbed is set forth quite in detail, and the complaint contains an averment that at and near the point where plaintiff was injured the car, by reason of such condition, was caused to swing violently, etc. The pleading also contains the averments that "by reason of the said insufficient, unsuitable and unsafe and defective condition of said roadbed and track, as aforesaid, and the negligent excavation of gravel and dirt under and about the same, as aforesaid, thereby greatly weakening the same . . . and causing the said car upon which plaintiff was as such passenger to violently jerk and swing and sway back and forth, all as aforesaid . . . the said plaintiff, without any fault or negligence on her part, was violently thrown from said car to the ground headfirst and thereby rendered unconscious, and sustaining great damage and injury." This is followed by a somewhat minute description of the injuries.

At the trial plaintiff elected to rely upon the cause of action pleaded in the second count; whereupon defendant moved to dismiss the first count. The court did not at that time grant the motion, but said: "I prefer to let the matter be retained and not dismissed at this time. We will pass on that later on." The motion was not renewed. We do not see that the plaintiff was prejudiced by the court's action, even though the ruling was made in the presence of the jury. Moreover, the motion was waived by failure to renew it before the close of the trial. It is argued, however, that the court erred in admitting evidence properly relative only to the first cause of action and in giving instructions suitably applicable only to matters pertaining to that count. The testimony which, as appellant asserts, was erroneouly considered related to the conduct of the motorman and conductor. Plaintiff herself testified that after she indicated to the conductor her desire to leave the car at Rose Avenue he pulled the strap attached to the bell and walked into the car; and that she did not know what he did there. Questions were propounded to the motorman (who was called as a witness by plaintiff) tending to show that some time before the car reached the place where plaintiff was injured the said motorman looked into the car and observed the conductor in conversation with a woman. The instructions to which appellant objects as preju-

dicial contain certain references to the responsibility of a corporation for the *management* of its cars, and it is argued that the testimony regarding the conduct of appellant's servants coupled with these instructions misled the jury into the belief that plaintiff was depending upon the first cause of action, which had been abandoned. The trouble with this argument is that the indicated conduct of the motorman and the conductor was not negligent. Surely the motorman's glance into the car at a time prior to the accident was not negligence, or, if negligence, was not and could not have had any relation to plaintiff's injuries. Nor did the fact that at that remote period the conductor was conversing with a passenger indicate breach of duty toward plaintiff on his part because he was available to give the signal when she decided to have the car stopped. Entering the car after ringing the bell was not a negligent act on his part, because it does not appear that he was in a position after going inside the car from which he could not see the passenger and give the signal to resume the trip after she might alight. Nor did the instructions relative to the duty of a corporation in operating its cars tend to mislead the jurors, because the case was clearly tried upon the theory not that defendant's servants caused plaintiff's fall from the car by their negligent starting of the car, but that she was precipitated to the ground by its movement from side to side in consequence of the imperfect condition of the track and roadbed.

Plaintiff called as a witness Mr. Thum, who had been motorman on the car from which she was thrown. Some questions were asked of him relative to the conductor's conversation with a lady in the car as it was passing the race-track some time before the accident. His answers did not satisfy plaintiff's counsel, and they were permitted to cross-examine their witness with reference to alleged statements made to them regarding that matter. This was improper, as was the introduction of impeaching testimony upon the same subject, to the effect that Thum had said to counsel in a conversation at his own home on a date designated that he had seen Johnson, the conductor, leaning over and talking to a blonde woman. The only real difference between the actual testimony of the witness and his purported statement to counsel was that on the stand he said he saw Johnson speaking to the lady, while in his statement, as quoted by the impeaching

witnesses, he said Johnson was holding a conversation with her. The impeachment was quite as immaterial as was the testimony itself. But Thum was asked questions about the condition of the roadbed and track at the point where plaintiff was injured, and he was interrogated with reference to the jolting or jarring of the car just before the accident occurred. He replied, in substance, that the roadbed and track were all right at that place and that the car did not sway, jump, or jerk. Counsel were permitted to cross-examine him and to lay the foundation for impeachment by asking if he did not say to them at a time and place indicated and in the presence of persons named that just before plaintiff left the car it jerked, lurched, and wobbled, and that on numerous occasions at that part of the road the roughness of the track had caused the trolley to be thrown off the wire. Witness denied making such statements. Subsequently a motion was made to strike out all of Mr. Thum's testimony on the ground that it was elicited in the course of a cross-examination which plaintiff's counsel were not properly permitted to conduct, as the witness (so defendant's counsel argued) had stated nothing to the detriment of the plaintiff's case. In ruling on the motion the learned judge who presided at the trial called attention to the fact that witness testified in a damaging way to plaintiff's case when he said the car did not swing nor sway, and that, therefore, impeachment regarding that matter was perfectly proper if witness had made different statements before the trial. Regarding the cross-examination of the witness upon the subject of the presence of one woman in the car the court said: "In reference to the other point, he testified first rather vaguely about whether there were one or two women on the car. I examined him then myself and the witness stated there was one woman on the car. I asked him, 'Do you state that is a fact that there was one woman on the car?' and he said 'Yes.' . . . I assume that before they get through, they will prove that there were two women there in connection with their case. If they do not prove that, that part of their evidence, that part of the impeachment, contradictory statements will be stricken out." Afterward when Mr. Welsh, of plaintiff's counsel, took the stand to testify with reference to the interview which he and Mr. Henry, his colleague, had with Mr. Thum, the court said: "In view of the testimony appearing

that counsel for plaintiff has not attempted to prove that there were two women on the car at the time of the accident, and it developing that was not part of their case, nor the theory upon which they base their right to recover, the testimony of the witness Thum that there was only one woman on the car at the time of the accident was not contrary to their theory and was not adverse testimony, and the impeachment to that extent will not be permitted. The testimony on that behalf will be stricken out; the remaining portion of the testimony, however, may stand, as to the condition of the track and so forth, remains in the case; so any testimony by yourself, Mr. Welsh, will be limited to that.'' The argument made by appellant is that this ruling did not strike out nor limit the ill-effect of that part of the testimony which tended to show that the conductor was talking to a woman and neglecting his business. There is no force in this contention. The ruling was plenary and removed from the consideration of the jurors all of the testimony regarding the presence of a woman other than the plaintiff in the car, and consequently it also took from the jury all statements referring to a supposed conversation between her and the conductor. Impeachment of the witness upon his testimony that there was no jar nor unusual motion of the car at the time of plaintiff's injury was perfectly proper. Undoubtedly it is the rule, sustained by such authorities as *People* v. *Jacobs,* 49 Cal. 384, *People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101], and a score of others that where a witness called by a party to an action has simply failed to testify as expected, it is not permissible for the party calling him to prove that he had previously made statements which if sworn to at the trial would tend to support the case of the proponent of the witness. In order to justify such impeachment the witness must give testimony *against* the party calling him. But that is just what Thum did. Called, and therefore indorsed by plaintiff, he not only failed to meet the expectation that he would say the track was rough and the movements of the car erratic, but he denied those very things, thereby entitling plaintiff to remove, if possible, the impression that such testimony must have made. (Code Civ. Proc., sec. 2049; *Zipperlen* v. *Southern Pacific Co.,* 7 Cal. App. 206–214, [93 Pac. 1049].)

Appellant specifies as prejudicial error the giving of certain of the instructions. The court told the jury that "common carriers of passengers bind themselves to carry safely those whom they take into their cars, so far as human care and foresight will do so; that is, with the utmost care and vigilance of a very cautious person; and such carriers are responsible for any, even the slightest, negligence." By the instruction immediately preceding this one the jurors were informed that common carriers are required to do all that human care, vigilance, and foresight *"reasonably* can do under all the circumstances" to prevent accidents to passengers. Taken together these instructions correctly state the law. They do not impute to the carrier the duties of an insurer, as appellant contends that they do, nor does the expression "responsible for any, even the slightest negligence," cut off appellant from the benefits of the law with reference either to contributory negligence or inevitable casualty. The degree of caution and care imposed upon a carrier of passengers is properly defined by the instruction. (*Treadwell* v. *Whittier,* 80 Cal. 574–585, [13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266]; *Bosqui* v. *Sutro R. R. Co.,* 131 Cal. 390–401, [63 Pac. 682]; *Roberts* v. *Sierra Ry. Co.,* 14 Cal. App. 180–195, [111 Pac. 519, 527].)

Two other instructions are criticised, not because wrong in principle, but because they related in part to the duty of defendant in the management of the car—an issue which, according to appellant, had been abandoned. It is true that plaintiff had abandoned that count which related to defendant's alleged negligence in starting the car in such manner as to project plaintiff from the platform to the street, but the negligence averred in the other count did not exclude all questions regarding the operation of the car. The gist of the averred negligence was indeed the defendant's operation of its car over a track so rough and unsuitable that plaintiff, a passenger, was thrown and injured. Therefore, the instructions covering the duty of a common carrier in the operation of its cars were properly given.

Another instruction contained the following as its opening sentence: "It is no defense to this action that the plaintiff by her own act has contributed to her injury; it must appear that by her own fault she has so contributed." This language is followed by a statement of the rule requiring of a passenger

only ordinary prudence, not very great care. Appellant's objection goes to the first sentence, which, as its counsel assert, informed the jury, in effect, that the defense of "contributory negligence" should be disregarded by them altogether. We discover no such vice in the quoted sentence. Indeed, it was very appropriate to the facts of this case as disclosed by the undisputed evidence. It was shown that plaintiff arose from her seat and prepared to alight from the car before reaching her destination. Assuming that she was thrown from the car by its unusual motion, it may be truly said that her acts of arising to her feet and leaving the part of the car in which she had been seated contributed in a sense to her injury, but it was for the jury to determine whether such acts were negligent or not, under all of the circumstances revealed by the evidence.

The court gave the following instruction: "You are instructed that contributory negligence on the part of the plaintiff cannot be presumed from the mere fact of injury but must be proved. On the other hand, proof of the injury, *coupled with proof that it proceeded from a sudden, unusual or violent jerking, or swinging, or swaying of the car, while the plaintiff was preparing to alight,* casts upon the defendant the burden of proving that the injury was occasioned by inevitable casualty or some other cause which human care and foresight could not prevent, or by the contributory negligence of the plaintiff." (The italics are ours.) With the exception of the italicized portion, this is the same instruction condemned by this department in *Steele* v. *Pacific Electric Ry. Co.,* 168 Cal. 375–377, [143 Pac. 718] ; but the addition of the words in italics rescues the instruction from the vice of the court's direction to the jury which we there reviewed. It is true that the mere injury to the passenger does not place upon the carrier the duty of explanation, but the establishment of such injury, coupled with proof of coincident and causal collision, derailment, or other unusual happening to the car, does cast upon defendant the burden of exculpation as indicated by the instruction.

The giving of two other instructions is assigned as error. By one of these the jurors were told that "the law does not prescribe any fixed or definite rule of damages, but leaves their assessment to the common sense and unbiased judgment of the jurors." The other instruction was in the form approved in

*Ryan* v. *Oakland Gas Light & Heat Co.*, 21 Cal. App. 14–22,
[130 Pac. 693]—a case in which this court denied a petition
for transfer. This court has frequently approved the state-
ment in *Aldrich* v. *Palmer*, 24 Cal. 513–516, that "In actions
for personal torts the law does not attempt to fix any precise
rules for the admeasurement of damages, but, from the neces-
sity of the case, leaves their assessment to the good sense and
unbiased judgment of the jury." It is argued, however, that
the instruction was erroneous, because it ignored section 3283
of the Civil Code, which does, as appellant insists, prescribe
a fixed and definite rule for the assessment of damages for
detriment resulting after the commencement of an action in
tort or certain to result in the future. It is true that the
cited section does enumerate certain injuries for which com-
pensation may be awarded, but the manner of assessment of
such damages is no more definitely prescribed than in the in-
struction criticised. That instruction merely assigned to the
unbiased judgment of the jury the assessment of the amount
of damages, if any, to be awarded.

Error is predicated upon the modification by the court of
proposed instructions and refusal to give certain proposed
charges. We have examined these assignments and are satis-
fied that they are without merit. The charge to the jury was
full, clear, and fair, and defendant was not injured by any
of the rulings regarding which complaint was made.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.