[Civ. No. 4863. Third Appellate District.—October 6, 1933.]

JESSE MANUEL, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

W. H. Spaulding, Thomas J. Straub and Clinton F. Stanley for Appellant.

Mervin C. Lernhart for Respondent.

PULLEN, P. J.—Plaintiff was awarded damages against appellant for personal injuries inflicted by contacting a wire fence which had become charged with electricity from a fallen high-voltage wire.

At the conclusion of the trial the defendant moved for a directed verdict on the ground of the failure of any proof of negligence on the part of the defendant, which motion was denied, and thereafter moved for judgment notwithstanding the verdict upon the same ground. A motion for a new trial followed and, also, a motion to vacate the judg-

ment and verdict rendered in favor of the plaintiff against the defendant, all of which were by the court denied, and defendant now appeals to this court, asking that judgment be entered in its favor on the ground it appears from the evidence as a whole that a verdict should have been so directed at the conclusion of the trial.

Respondent in his complaint alleges the injuries suffered were caused by reason of the negligence and carelessness of the defendant in constructing and maintaining said power line.

The facts as adduced at the trial disclose that on the day of the injuries alleged the Pacific Gas and Electric Company maintained a service line of high voltage consisting of two wires along a county road in Napa County, and over and above a wire fence, both power line and fence paralleling the road. The fence was built many years prior to the location of the power line, which carried 6,600 volts through two strands of number six copper wire from the main power lines of appellant to users of electric power in the neighborhood.

On the day in question a seven year old boy was shooting birds with a 22-caliber rifle along the roadway, and after firing a shot testified he saw one of the wires drop, which fell across the wire boundary fence, whence the current was conducted to a point about one and one-half miles distant, where it started a fire upon the property of the respondent. Respondent, in attempting to extinguish the fire, came in contact with some charged loose wires concealed beneath some rubbish and dry grass, whereby he sustained serious injuries, for which he recovered the judgment herein complained of. Whether the electric wire was severed by the rifle bullet of the youth or from some other cause was the principal issue before the jury.

It may be conceded that the testimony of the boy on that question was not altogether convincing, although he testified he did not hit the wire, but, after he had walked about ten feet, he saw the wire fall. He further testified that he shot towards the mountains and away from the point of break, and the bird at which he was shooting was on a wire between two different sets of electric poles than was the span in which the break occurred. From the map of the surroundings used at the trial, if the line of the

shot was towards the mountains, it was then almost at right angles to the point of the break in the wire.

Plaintiff developed by certain witnesses of appellant that a kink in the wire while being strung along the power line, or a chance blow by a tool of one of the employees could have caused the injury to the wire, resulting in its fall.

Certain witnesses of appellant testified as to seeing and examining the broken portions of the wire which appeared to have been damaged by having been flattened in part, leaving the weight of the wire supported by a portion only of the strand and the damaged ends seemed to have been covered by a grayish material, described by one or two of the witnesses as being lead. The broken ends were not produced at the trial, although they were before a coroner's jury at an earlier date.

Five witnesses were called who examined the broken piece of the power line. Enoch Crozier, local agent for appellant at Calistoga, testified he examined the ends of the broken wire and, in the presence of Harry Decker, cut the ends of the broken wire and took them to the office of the company at Calistoga. Mr. Crozier was not asked, nor did he describe the appearance of the wire ends, nor did he express any opinion as to the cause of the break. Harry Decker, an electrician of Calistoga, testified that he assisted Crozier in cutting the broken ends of the wire and that it "looked like only half of the wire was there at that broken point . . . having a slight depression on one side . . . one side would have the appearance of being flat and the other side would have a small concave on the side of the wire . . . as if you would take a file and run it across a small object". Also, he saw some foreign matter on the ends of the wire, but did not examine it closely enough to state whether or not it was metal. These are the only witnesses who could testify that this wire examined by them was actually the section removed from the power line at the point of the break.

Mr. Ray Long, employed in the engineering department of appellant, testified that he examined two pieces of wire handed him by Crozier and stated: "The wire appeared to have been hit by some blunt instrument . . . the wire was bent and flattened . . . a lead deposit on the inside surface . . . which I took to be lead. Q. How did you determine it

was lead on this wire?   A. By the color and the fact I could scrape it with my knife."

Mr. C. D. Clark, district manager for appellant, was also a witness, and in answer to a question to describe the ends of the wire exhibited to him at the coroner's inquest, said: "They were curved in, cut like any other sort of a cut or a break.   The ends were coated with lead where they had parted.   The curved part was almost all the way through the wire, a small part of the wire remaining, showing where the actual break occurred."

Mr. Treadway, coroner of Napa County, was asked to describe the ends of the wire in question and he answered, "There was a break where the wire broke and it looked like it had been hit with something and flattened out and then parted . . . it had a dent in it." He also observed some foreign metal—not copper—on the ends of the wire, lighter in appearance than copper. He also testified that shortly after the accident he observed a nick or dent in one of the wires on the other side of the pole from which the break occurred, and in the general direction of where the boy testified he had fired his gun. Subsequently a witness called for the defense testified that he was present on the day following the accident and the spans from the adjoining poles were taken down and examined and no defects of any kind were found in the wires.

█ The testimony produced by appellant and by the respondent only raised a conflict, and the jury decided that greater weight and credibility lay with the testimony adduced by respondent. There is nothing before us which impeaches the findings of the jury, and we are bound to accept their conclusions as true, and conclude that the break was not caused by a missile from the rifle of the boy.

It also appeared that one of the fuses placed at the junction of the service lines on which the break occurred failed to break or melt, but was knocked out by one of the employees of the company, thus cutting off the flow of current from the broken wire into the fences and thence into the body of respondent. Appellant claims they were using fuses of proper size for the amperage in question and that the fuses did not break because the soil, being dry, did not make a sufficient "ground" to increase the flow of current

through the fuse. The fuses were not produced at the trial, however, and the jury had a right to infer that they may have been defective or too large for the normal factor of safety required under the circumstances. (Sec. 1963, Code Civ. Proc.) That also was a matter for the consideration of the jury.

Respondent relies upon the doctrine of *res ipsa loquitur*, and has alleged in his complaint general acts of negligence only. Appellant claims that the rule *res ipsa loquitur* applies in negligence cases upon the theory that the plaintiff is not in a position to show the circumstances causing the injuries complained of, and defendant, having the exclusive management and control of the instrumentality causing the injury, possesses knowledge of the cause of the accident, but, when the cause is established by either party to the action the doctrine is not then applicable. (*Carlsen* v. *Diehl*, 57 Cal. App. 731 [208 Pac. 150]; *Lyon* v. *Chicago, M. & St. Paul Ry. Co.*, 50 Mont. 532 [148 Pac. 386]; *Jianou* v. *Pickwick Stages System*, 111 Cal. App. 754 [296 Pac. 108].) That is undoubtedly a correct statement of the rule, and under it appellant insists the evidence establishes the injury was the result of a fallen wire due to a rifle bullet, and that no negligence was chargeable to appellant in the breaking of the wire, or in the construction or maintenance of the line, and that no negligence of the appellant was involved either in the installation or maintenance of the safety devices, or in the failure to ground the wire fence and therefore the doctrine is not here applicable.

It is true the burden of proof remains at all times upon the plaintiff and that the doctrine of *res ipsa loquitur* does not shift the burden but merely establishes a *prima facie* case of negligence which the defendant is bound to meet, and all that the defendant is required to do is to produce evidence sufficient to offset the effect of plaintiff's *prima facie* case.

As to the law, we believe this to be a case for the application of the rule, and as to the facts the jury were apparently not convinced by the theory of the break of appellant, and whether the break was due to the impact of the rifle bullet or to kinks in the line put in when the cable was strung or to a blow from an unknown tool, or to some other unexplained cause, was for them to determine.

It was also for appellant to establish to the satisfaction of the jury, under the doctrine of *res ipsa loquitur*, that the line in question had been built in a proper manner of standard materials and that safety appliances of adequate design and operation were installed and functioning. So, also, was it a question of fact as to whether or not the fences should have been "grounded" to carry off any surplus electricity that might have been carried to them.

Under the application of the rule *res ipsa loquitur* respondent established a *prima facie* case of negligence and the conflict being for the jury to decide, we cannot say they erred in coming to the conclusions they did.

The judgment and the order denying the motion of the defendant for judgment notwithstanding the verdict are affirmed.

Plummer, J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 4, 1933.