[L. A. No. 18953. In Bank. Dec. 30, 1944.]

CHARLOTTE E. LEET, as Administratrix, etc., Respondent, v. UNION PACIFIC RAILROAD COMPANY (a Corporation), Appellant.

[L. A. No. 18954. In Bank Dec. 30, 1944.]

CHARLOTTE E. LEET, as Administratrix, etc., Respondent, v. UNION PACIFIC RAILROAD COMPANY (a Corporation), Appellant.

E. E. Bennett, Edward C. Renwick and Malcolm Davis for Appellant.

Hildebrand, Bills & McLeod, Martin & Downey and Louis H. Brownstone for Respondent.

CARTER, J.—In these two actions plaintiff, as administratrix of the estates of Thatcher and Utterback, recovered judgments in the trial court for damages under the Federal

Employers' Liability Act as the result of the wrongful deaths of decedents. (45 U.S.C.A. § 51 et seq.)

Decedents were killed in Portland, Oregon, while in the employ of defendant railroad company. They and their heirs were residents of Oregon. The heirs nominated plaintiff to be administratrix and she was appointed by the superior court sitting in probate in Los Angeles County. Defendant is a Utah corporation and admits that it was and is doing business in California. After the commencement of the actions in the Superior Court in Los Angeles County, California, by plaintiff, defendant obtained decrees in an Oregon trial court restraining decedents' heirs from prosecuting the actions in California. Defendant made motions in the California court to abate the actions and also pleaded the Oregon injunction decrees in its answer. Defendant also made motions to continue the trial of the actions "indefinitely." Those motions were based upon the same grounds urged in the Oregon court in the injunction proceedings and the facts with reference thereto are undisputed. They are, that the deaths occurred in Oregon; that decedents and their heirs were residents of Oregon; that for defendant to present its defense it would have to transport twenty witnesses from Oregon to California; that it operates a railroad in both Oregon and California; that plaintiff resides in California; that defendant is engaged, by the direction of the Government of the United States, in transporting troops and war materials in Oregon and other areas and for that purpose requires the services of many employees including the witnesses above mentioned; that such transportation will be seriously impeded if it is required to transport those witnesses to California for the trial of the actions, and because of its inability to transport them it must rely upon their depositions; that it is engaged in interstate commerce, and was so engaged at the time of the deaths. Defendant charges that counsel for plaintiff handles many actions under the Federal Employers' Liability Act and consistently prosecutes them in California courts although the accidents occur in other states and with the motive of making the defense of such actions costly and difficult for defendant; that interstate commerce and the war effort will be seriously impaired and burdened by having the actions tried in California and that defendant cannot properly defend the actions here.

The court denied defendant's motions without opinion and it must be assumed the denial was on the merits. The Supreme

Court of Oregon reversed the decrees of the Oregon trial court enjoining the prosecution of the actions in California. (*Union Pac. R. R. Co.* v. *Utterback; Union Pac. R. R. Co.* v. *Thatcher*, —— Ore. —— [146 P.2d 76, 769].) Defendant's petition for a writ of certiorari to the Supreme Court of the United States from the Oregon decision was denied.

The main issue presented on this appeal of defendant from the judgments for plaintiff is that the foregoing circumstances required the superior court of California to abate the actions, grant the continuance and refuse to entertain jurisdiction of them. The solution of that problem depends upon the effect of the provision in the Federal Employers' Liability Act. It reads:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States, and no case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." (45 U.S.C.A. § 56.)

It is conceded that under the foregoing section the California court has *jurisdiction* of the subject matter of and parties to the actions. It is admitted that the defendant railroad company is doing business in California and hence is amenable to the process of the California court, and by the terms of section 56 a competent court of three states may have concurrent jurisdiction of actions under the Federal Employers' Liability Act, namely, the residence of the defendant, where the action arose, or where the defendant is doing business. It should also be noticed that the superior court of California is an existing court with jurisdiction under the state law to adjudicate actions under the Federal Employers' Liability Act. Hence, the sole question is, what circumstances, if any, will justify the state court in refusing to exercise the jurisdiction it admittedly has over an action under the Federal Employers' Liability Act.

Whatever may have been the rule on the subject from time to time it is now settled that the state court having jurisdiction may not refuse to exercise it. The doctrine of *forum*

*nonconveniens,* claim of a burden on interstate commerce, or war conditions constitute no justification for a refusal to exercise jurisdiction.

The rule of *forum nonconveniens* is an equitable one embracing the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action before it may be more appropriately and justly tried elsewhere. If the plaintiff by reason of section 56 has an absolute right to have the action tried in the named courts, there is no room for the doctrine. It has been repeatedly held that the right to have an action brought under the act tried in one of the mentioned *federal district courts* is absolute. (*Connelly* v. *Central R. R. Co. of New Jersey,* 238 F. 932; see *Baltimore & Ohio R. R. Co. v. Kepner,* 314 U.S. 44 [62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222]; *Miles* v. *Illinois Central R. R. Co.,* 315 U.S. 698 [62 S.Ct. 827, 86 L.Ed. 1129]; *Trapp* v. *Baltimore & O. R. R. Co.,* 283 F. 655.) And that right cannot be defeated by the doctrine of *forum nonconveniens,* convenience, or other equitable grounds such as vexatious suits or anything else except congressional action; the court has a duty to exercise its jurisdiction. (*Schendel* v. *McGee,* 300 F. 273; *Southern Ry. Co.* v. *Painter,* 117 F.2d 100; *Southern Ry.* v. *Cochran,* 56 F.2d 1019; *Chesapeake & Ohio Ry.* v. *Vigor,* 90 F.2d 7, cert. denied 302 U.S. 705 [58 S.Ct. 25, 82 L.Ed. 545]; *Rader* v. *Baltimore & Ohio R. R. Co.,* 108 F.2d 980; *Miles* v. *Illinois Central R. R. Co., supra; Baltimore & Ohio R. R. Co.* v. *Kepner, supra; Union Pac. R. R. Co.* v. *Utterback, supra.*) While some of the foregoing authorities involved an injunction issued against the parties by one court against the prosecution of the action in a court having jurisdiction, as distinguished from a motion in the forum to refuse jurisdiction, the principle is the same. The injunction will not be granted on the equitable grounds of convenience or vexation because the plaintiff's right is absolute and the court cannot deny jurisdiction. If it is absolute then the forum has no right to refuse jurisdiction. In *Chesapeake & Ohio Ry. Co.* v. *Vigor, supra,* the deceased was injured in Ohio and defendant railroad company was a resident of that state and the plaintiff administrator was appointed there. The action was brought in the federal district court in Indiana where defendant was doing business, and an action for injunctive relief was brought in the federal district court in Ohio. The federal Circuit Court of Appeals in affirming the

denial of an injunction by the District Court stated at page 8 :

"The plaintiff (the railroad company in the injunction action), it is true, may suffer some inconvenience or be put to extra expense in producing witnesses to testify in court in the Indiana case, but *it is to be presumed that Congress considered such probable inconvenience and expense in placing jurisdiction of the action in any district in which the defendant should be doing business at the time.* We held in *Southern Railway Company* v. *Cochran,* 56 F.2d 1019, that the filing of a suit in such a jurisdiction, even though it was inconvenient to the defendant, was not enough to justify a court of equity in enjoining its prosecution in the face of the statute giving the right to bring the action in that jurisdiction. This ruling is consonant with established authority, and it is controlling in the case at bar." (Italics added.) In *Baltimore & Ohio R. R. Co.* v. *Kepner, supra,* the court affirmed a judgment denying an injunction by a state court wherein it was sought to restrain plaintiff from prosecuting an action under the Federal Employers' Liability Act in a federal district court in a district where defendant did business but in which neither plaintiff nor defendant resided and where the accident did not occur, on the grounds of the convenience of witnesses and the inequities resulting. The court said at page 52:

"We read the opinion of the Supreme Court of Ohio to express the view that if it were not for section 6 of the Employers' Liability Act the requested injunction would be granted on the undisputed facts of the petition. Section 6 (45 U.S.C.A. § 56) establishes venue for an action in the federal courts. As such venue is a *privilege created by federal statute* and claimed by respondent the Supreme Court of Ohio felt constrained by the Supremacy Clause to treat Section 6 as decisive of the issue. It is clear that the allowance or denial of this federal privilege is a matter of federal law, not a matter of state law under *Erie R. R. Co.* v. *Tompkins,* 304 U.S. 64, 72, 82 L.Ed. 1188, 1191, 58 S.Ct. 817, 114 A.L.R. 1487. Its correct decision depends upon a construction of a federal act. Consequently the *action of a state court must be in accord with the federal statute and the federal rule as to its application rather than state statute, rule or policy.*

"Petitioner presses upon us the argument that the action of Congress gave an injured railway employee the privilege of extended venue, subject to the usual powers of the state to enjoin what in the judgment of the state courts would be con-

sidered an improper use of that privilege. This results, says petitioner, because the Act does not in terms exclude this state power. As courts of equity admittedly possessed this power before the enactment of Section 6, the argument continues, it is not to be lightly inferred that the venue privilege was in disregard of this policy. But the federal courts have felt they *could not interfere with suits in far federal districts where the inequity alleged was based only on inconvenience. There is no occasion to distinguish between the power and the propriety of its exercise in this instance since the limits of the two are here co-extensive.* The privilege was granted because the general venue provisions worked injustices to employees. *It is obvious that no state statute could vary the venue and we think equally true that no state court may interfere with the privilege, for the benefit of the carrier or the national transportation system, on the ground of inequity based on cost, inconvenience or harassment.* When the section was enacted it filled the entire field of venue in federal courts. A privilege of venue granted by the legislative body which created this right of action cannot be frustrated for reasons of convenience or expense. If it is deemed unjust, the remedy is legislative, a course followed in securing the amendment of April 5, 1910, for the benefit of employees.'' (Italics added.) In *Miles* v. *Illinois Central R. R. Co., supra,* a state court in Tennessee enjoined a resident widow from prosecuting an action for her husband's death occurring in Tennessee, in a Missouri state court where the railroad did business but had no residence. The injunction was based upon the inconvenience of witnesses, oppressiveness and inequity as to the railroad. The court reversed the injunction judgment stating at page 702:

''The real point of controversy here is whether that portion of section 6 (45 U.S.C.A., sec. 56) of the F. E. L. A., which *holds litigation in the state court where it is instituted,* prevents the court of another state from enjoining citizens, within its jurisdiction, from continued prosecution of the suit on grounds of inequity. Here, as in Kepner's case, there is no question but that the Missouri court has venue of the proceeding. Here, too, we need to look no farther into Tennessee law than the opinion of the state's highest court, in this record, to conclude that *under state law a court of equity may enjoin a resident citizen from attempting to enforce his rights, oppressively and inequitably,* and that the expense and inconvenience hereinbefore set out resulted in oppressiveness and inconvenience in the eye of the state court.

"In the legislative history of section 6, the provision that removal may not be had from a 'state court of competent jurisdiction' was added to the House Bill on the floor of the Senate and later accepted by the House, in order to assure a hearing to the employee in a state court. Words were simultaneously adopted recognizing the jurisdiction of the state courts by providing that the federal jurisdiction should be concurrent. The venue of state court suits was left to the practice of the forum. *The opportunity to present causes of action arising under the F. E. L. A. in the state courts came, however, not from the state law but from the federal.* By virtue of the Constitution, *the courts of the several states must remain open to such litigants on the same basis* that they are open to litigants with causes of action springing from a different source. This is so because the Federal Constitution makes the laws of the United States the supreme law of the land, binding on every citizen and every court and enforceable wherever jurisdiction is adequate for the purpose. *Second Employers' Liability Cases,* 223 U.S. 1, 56-69 [32 S.Ct. 169, 56 L.Ed. 327]. *The Missouri court here involved must permit this litigation.* To deny citizens from other states, suitors under F. E. L. A., access to its courts would, if it permitted access to its own citizens, violate the Privileges and Immunities Clause. Constitution, Art. IV, section 2; *McKnett* v. *St. Louis & S. F. Ry. Co.,* 292 U.S. 230, 233 [54 S.Ct. 690, 78 L.Ed. 1227]. Since the existence of the cause of action and the privilege of vindicating rights under the F. E. L. A. in state courts *spring from federal law,* the right to sue in state courts of proper venue where their jurisdiction is adequate *is of the same quality as the right to sue in federal courts. It is no more subject to interference by state action than was the federal venue in the Kepner case.*

". . . As Congress has permitted both the state and federal suits, its determination that the carriers must bear the incidental burden is a determination that the state courts may not treat the normal expense and inconvenience of trial in permitted places, such as the one selected here, as inequitable and unconscionable." (Italics added.)

The Miles case is completely decisive that the doctrine of *forum nonconveniens* is no justification for a state court to refuse jurisdiction of an action under the Federal Employers' Liability Act. Likewise, it is conclusive that the state court

*must* take jurisdiction. It has no choice in the matter and no rule or policy on its part alters the situation. It has long been the law that where there is a competent state court, it must entertain an action under the F. E. L. A. (*Second Employers' Liability Cases*, 223 U.S. 1 [32 S.Ct. 169, 56 L.Ed. 327]) ; see *Miller* v. *Municipal Court*, 22 Cal.2d 818 [142 P.2d 297].) This court in holding that an administrator must be appointed in California to prosecute an action in California under the Federal Employers' Liability Act even though neither defendant nor the deceased resided here and there was no estate of the decedent in California other than the cause of action arising from the fact that the railroad did business here, said in *Estate of Waits*, 23 Cal.2d 676, 679 [146 P.2d 5] :

"The Federal Employers' Liability Act authorizes suit by the aggrieved party in any state where the carrier does business. (45 U.S.C.A., sec. 59; *Miles* v. *Illinois Central R. Co.*, 315 U.S. 698 [62 S.Ct. 827, 86 L.Ed. 1129].) Since a suit requires the appointment of a personal representative (*American R. R. Co.* v. *Birch*, 224 U.S. 547 [32 S.Ct. 603, 56 L.Ed. 879]), who is ordinarily allowed to sue only in the state of his appointment (see Code Civ. Proc., sec. 1913), *refusal to appoint an administrator in a state where suit is authorized by the act would nullify the very right the act grants.*" (Italics added.) It should be noted that the court refers to the *right* granted. Certainly it would be idle to permit the appointment of an administrator and then have the trial court refuse to exercise its jurisdiction over the action.

The latest expression of the Supreme Court of the United States appears from its denial of certiorari from the decisions of the Oregon Supreme Court in the injunction proceedings heretofore sustained. While that may not be an approval of the Oregon decisions, it is persuasive and we agree with what is there said.

"As we understand the doctrine of *Baltimore & Ohio R. Co.* v. *Kepner*, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222, and *Miles et al.* v. *Illinois Cent. R. Co.*, 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, a state court cannot validly exercise its equitable jurisdiction to enjoin a resident of the state from prosecuting a cause of action arising under the Federal Employers' Liability Act where the act conferred venue on the ground that the prosecution in the court of the sister state is inequitable, vexatious and harassing to the carrier." (*Union Pac. R. Co.* v. *Utterback*, —— Ore. —— [146 P.2d 76, 79].)

This court, although not dealing with the conditions here involved, has recently stated the general proposition:

". . . that a state court, otherwise competent to exercise jurisdiction over the subject-matter, the parties, and the amount in controversy, must assume jurisdiction of an action created by federal law enacted pursuant to a legitimate federal function, regardless of whether or not that action be considered either as penal or as furthering the governmental interest." (*Miller* v. *Municipal Court,* 22 Cal.2d 818, 851 [142 P.2d 297].)

It is fallacious to assume that there may be an unreasonable burden upon interstate commerce to permit the action to be tried in California when witnesses will have to be transported to California from Oregon. The query at once suggests itself, who is burdening interstate commerce? Certainly not the California court because it is merely following the mandate of the Federal Employers' Liability Act which confers jurisdiction upon it. Hence, the only burden would be that imposed by Congress in adopting the act. The courts have squarely repudiated the proposition. (*Miles* v. *Illinois Central R. R. Co., supra; Baltimore & Ohio R. R. Co.* v. *Kepner, supra; Chesapeake & Ohio Ry. Co.* v. *Vigor, supra; Southern Pac. Co.* v. *Baum,* 39 N.M. 22 [38 P.2d 1106] ; *Hoffman* v. *Missouri ex rel. Foraker,* 274 U.S. 21 [71 S.Ct. 905, 47 L.Ed. 485].) The Supreme Court of the United States said in the Kepner case at page 54:

"This Court held in *Hoffman* v. *Missouri ex rel. Foraker,* 274 U.S. 21, 71 L.Ed. 905, 47 S.Ct. 485, that the burden on interstate commerce would be disregarded where the carrier had lines in the distant state. The importance of unhampered commerce is at least as great as that of a carrier's freedom from harassing incidents of litigation. Whatever burden there is here upon the railroad because of inconvenience or cost does not outweigh the plain grant of privilege for suit in New York." In the Miles case that court said at page 701:

"As in the Kepner case, there is in this case no occasion to go into the question of the availability as support for an injunction, of a charge of interference with interstate commerce by reason of the burden of expense and inconvenience. The trial court found a burden on the commerce of the Illinois Central, but made no finding as to any burden on interstate commerce. Moreover, the Court of Appeals stated that the Illinois Central 'expressly abandoned the contention' 'that

the prosecution of the suit in St. Louis was a burden on interstate commerce.' No contention is made here that there is any such burden or that the Illinois Central is not doing substantial business in Missouri, as found by the trial court. It operates daily passenger trains with its own crews into St. Louis over the St. Louis Terminal Company tracks, maintains passenger and freight offices and had total receipts, in St. Louis, of a million-and-a-half the year the suit was filed. Under the rule announced in *Denver & Rio Grande W. R. Co.* v. *Terte,* 284, U.S. 284, 287 [52 S.Ct. 152, 76 L.Ed. 295], the Illinois Central is properly suable in Missouri. In the Kepner case, 314 U.S. 44, 51 [62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222], we pointed out, with a discussion of the applicable cases, that *the carrier must submit to inconvenience and expense, if there is jurisdiction, 'although thereby interstate commerce is incidentally burdened.'* There is no occasion to repeat the comments here. The specific declaration is section 6 (45 U.S.C.A., § 56) that the United States courts should have concurrent jurisdiction with those of the several states, and the prohibition against removal, point clearly to the conclusion that *Congress has exercised its authority over interstate commerce to the extent of permitting suits in state courts, despite the incidental burden, where process may be obtained on a defendant,* not merely soliciting business but actually carrying on railroading by operating trains and maintaining traffic offices within the territory of the court's jurisdiction." (Italics added.)

Turning to war conditions as a possible basis for a refusal by the California court to exercise jurisdiction reliance is placed upon the Interstate Commerce Act (49 U.S.C.A. § 618) which authorizes the President to demand traffic preference for transport of troops and war material. It is conceded that no presidential order has been made on the subject of venue of actions against railroads. How then may a state court brush aside the venue provisions of the Federal Employers' Liability Act under war powers? Assuming the President or Congress may, this court may not. We have seen that those provisions grant an absolute right. Only Congress, or possibly the President under war powers, may restrict that right. If such power exists at all it would authorize a court to refuse to entertain jurisdiction of any action where the witnesses would be absent from vital war production while attending court. In other words, the courts would be closed to litigants. As before stated,

the United States Supreme Court has denied certiorari from the decision of the Oregon Supreme Court in the injunction proceedings. The Supreme Court of Oregon stated (146 P.2d 76) at page 80:

"We think, therefore, that the President through the Secretary of War would be warranted in making an order restricting the venue of suits against carriers under general control, either complete or supervisory, while such carriers were engaged in transporting troops, munitions or military supplies, if and when, in the judgment of the President, the practice reflected in plaintiffs' complaints was prejudicial to the just interests of the government in the prosecution of the war. *Alabama & V. R. Co.* v. *Journey,* 257 U.S. 111, 42 S.Ct. 6, 66 L.Ed. 154.

"We cannot, however, bring ourselves to believe that, even to promote the prosecution of the war effort, in the absence of any such order a state court of one state may enjoin the continuance of litigation pending in the court of another state where venue is expressly given to the latter by an Act of Congress. . . .

"We cannot subscribe to the principle that upon the sole ground of military expediency while a war is in progress the civil courts should be held to have the right and to be charged with its attendant duty to intrude their judgment with respect to the necessity or advisability of suspending the operation of the provisions of an Act of Congress. We think that in time of war such a course would be an encroachment upon the prerogative of the Commander in Chief of the military forces."

From the foregoing it is clear that the California court had jurisdiction to proceed with the trials of the above entitled causes and was required to exercise such jurisdiction.

Defendants cite various earlier cases on the subject and claim the statements in the Miles and Kepner cases are dicta but suffice it to say we believe those recent statements by the United States Supreme Court are decisive. It also speaks of there being no requirement that a state furnish a court for the trial of actions under the Federal Employers' Liability Act. With that issue we are not concerned inasmuch as the superior court is already established and is competent to entertain such litigation.

The motions for a continuance were, as has been stated, based upon the same grounds as the motions to abate and

were for an "indefinite time." Under those circumstances there was no question of the exercise of discretion by the court. If the court may not refuse to exercise its jurisdiction it may not accomplish the same result by an indefinite continuance.

■ Defendant claims that the court erred in instructing the jury on the doctrine of res ipsa loquitur. Plaintiff alleged that defendant negligently maintained its tracks and right-of-way thereby causing a train travelling thereon to become derailed and resulting in a collision with the train upon which decedents were riding as members of the crew. Defendant's contention rests upon the claim that plaintiff proved specific acts of negligence, that is, an improperly maintained roadbed causing a rail to break followed by derailment. Hence, it is asserted that plaintiff may not avail herself of the benefit of the doctrine. Defendant does not deny that the case would be a proper one for the application of the doctrine except for the proof of particular causes above mentioned. Assuming that plaintiff's evidence was aimed at showing the specific acts of negligence on defendant's part, plaintiff was still entitled to an instruction on the doctrine. There has been considerable confusion and conflict in this state as well as elsewhere on the subject of whether proof by plaintiff of specific acts of defendant's negligence will deprive him of the benefit of the doctrine or whether allegations in his complaint of specific acts of negligence will so deprive him, assuming that the doctrine is otherwise applicable, that is, the accident is of a character that would not ordinarily happen except for the negligence of defendant.

■ Turning first to the pleading question it has been stated that if negligence has been specifically but not generally pleaded by plaintiff he may not avail himself of the doctrine. (*Matthews* v. *Southern Pac. Co.*, 15 Cal.App.2d 36 [59 P.2d 220]; *Porter* v. *Rasmussen*, 127 Cal.App. 405 [15 P.2d 888]; *Hall* v. *San Joaquin L. & P. Corp.*, 5 Cal.App.2d 755 [43 P.2d 856]; *Wills* v. *Price*, 26 Cal.App.2d 338 [79 P.2d 406]; *Smith* v. *McClary*, 28 Cal.App.2d 468 [82 P.2d 712]; *Davidson* v. *American Liquid Gas Corp.*, 32 Cal.App.2d 382 [89 P.2d 1103]; *Marovich* v. *Central California T. Co.*, 191 Cal. 295 [216 P. 595]; *Harker* v. *Southern Cal. Edison Co.*, 83 Cal.App. 204 [256 P. 848]; *Connor* v. *Atchison etc. Ry. Co.*, 189 Cal. 1 [207 P. 378, 22 A.L.R. 1462]; *Horney* v. *Dillingham*, 81 Cal. App. 443 [253 P. 970]; *Ingledue* v. *Davidson*, 102 Cal.App. 703 [283 P. 840]; *Jianou* v. *Pickwick Stages System*, 111 Cal.

App. 754 [296 P. 108] ; *Queirolo* v. *Pacific Gas & Electric Co.*, 114 Cal.App. 610 [300 P. 487] ; *Damgaard* v. *Oakland High School Dist.*, 212 Cal. 316 [298 P. 983] ; *Klenzendorf* v. *Shasta U. H. School Dist.*, 4 Cal.App.2d 164 [40 P.2d 878] ; 79 A.L.R. 48.) But that if he pleads it both generally and specially he may rely upon the doctrine. (*McCole* v. *Merchants Express Corp.*, 19 Cal.App.2d 149 [64 P.2d 1130] ; *Ellis* v. *Jewett,* 18 Cal.App.2d 629 [64 P.2d 432] ; *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533] ; *McComas* v. *Al. G. Barnes Shows Co.*, 215 Cal. 685 [12 P.2d 630] ; *Hackley* v. *Southern Pacific Co.*, 6 Cal.App.2d 611 [45 P.2d 447] ; *Burke* v. *Dillingham,* 84 Cal.App. 736 [258 P. 627] ; *Queirolo* v. *Pacific Gas & Electric Co.*, 114 Cal.App. 610 [300 P. 487] ; *Roberts* v. *Sierra Ry. Co.*, 14 Cal.App. 180 [111 P. 519, 527] ; *Bourguignon* v. *Peninsular Ry. Co.*, 40 Cal.App. 689 [181 P. 669] ; *Seney* v. *Pickwick Stages,* 82 Cal.App. 226 [255 P. 279] ; *Vertson* v. *City of Los Angeles,* 116 Cal.App. 114 [2 P.2d 411] ; *Gish* v. *Los Angeles Ry. Corp.*, 13 Cal.2d 570 [90 P.2d 792] ; 79 A.L.R. 48.) On the other hand it has been held that the principle may be invoked even though plaintiff specifically pleads the acts of negligence and does not allege negligence generally. (See *Lippert* v. *Pacific Sugar Corp.*, 33 Cal.App. 198 [164 P. 810] ; *Soto* v. *Spring Valley Water Co.*, 39 Cal. App. 187 [178 P. 305] ; *Chauvin* v. *Krupin,* 4 Cal.App.2d 322 [40 P.2d 904] ; 79 A.L.R. 48.)

Between those two views it has been suggested that where negligence is pleaded both generally and specifically, plaintiff may rely upon the doctrine but only in aid of an inference of negligence in respect to the particular acts pleaded and none other. (*Gish* v. *Los Angeles Ry. Corp., supra; Wills* v. *Price,* 26 Cal.App.2d 338 [79 P.2d 406] ; *Phillips* v. *Southern Cal. E. Co., Ltd.*, 23 Cal.App.2d 222 [72 P.2d 769] ; *Harker* v. *Southern Cal. Edison Co.*, 83 Cal.App. 204 [256 P. 848] ; *Atkinson* v. *United Railroads of S. F.*, 71 Cal.App. 82 [234 P. 863] ; 79 A.L.R. 48.) However, by the very nature of the rule permitting the application of the doctrine where there is a general allegation of negligence together with specific allegations, the reasoning must be that defendant is advised by the pleading that he must meet an inference of negligence (res ipsa loquitur) whatever may be the particular acts or omissions charged; that is, he has notice that he must be prepared to meet an inference of negligence which may embrace misconduct in addi-

tion to the specific instances alleged. The essence of the matter is fairness in pleading to give the defendant such notice by the complaint that he may prepare his case. The rule that plaintiff cannot rely upon the doctrine where he pleads only specific acts of negligence has been predicated upon the principle that he may not prove a case outside the scope of his pleading and to permit him to have an inference of negligence which embraces acts or omissions not set forth in the complaint would violate that principle. (See *Porter* v. *Rasmussen,* 127 Cal.App. 405 [15 P.2d 888] ; *Harker* v. *Southern Cal. Edison Co.,* 83 Cal.App. 204 [256 P. 848] ; *Roberts* v. *Sierra Ry. Co.,* 14 Cal.App. 180 [111 P. 519, 527] ; *Marovich* v. *Central California T. Co.,* 191 Cal. 295 [216 P. 595] ; *Mintzer* v. *Wilson,* 21 Cal.App.2d 85 [68 P.2d 370] ; *Healy* v. *Market Street Ry. Co.,* 41 Cal.App.2d 733 [107 P.2d 488].) In the Marovich case the theory is succinctly stated at page 306:

"'. . . where the plaintiff in his complaint makes no general allegation of negligence, or no allegation of general negligence, instructions applying the doctrine of *res ipsa loquitur* should not be given. *This must be so for the reason that in such case the plaintiff can recover only upon proof of one or more of the specific acts or omissions alleged in his complaint.*" (Italics added.) It must be concluded therefore that if plaintiff alleges negligence specifically and generally he may rely upon the doctrine and the general inference of negligence flowing therefrom without limitation to the particular acts of negligence alleged inasmuch as by the general allegation of negligence defendant is notified that he must meet such a broad inference.

It is true that in some cases where the complaint contained only specific allegations of negligence the court held that the doctrine of res ipsa loquitur was not applicable because it could not be said, that in view of such allegations, defendant was in a better position than plaintiff to explain what occurred. (See *Porter* v. *Rasmussen,* 127 Cal.App. 405 [15 P.2d 888] ; *Jianou* v. *Pickwick Stages System,* 111 Cal.App. 754 [296 P. 108] ; *Smith* v. *McClary,* 28 Cal.App.2d 468 [82 P.2d 712] ; *Queirolo* v. *Pacific Gas & Electric Co.,* 114 Cal.App. 610 [300 P. 487] ; *Connor* v. *Atchison etc. Ry. Co.,* 189 Cal. 1 [207 P. 378, 22 A.L.R. 1462].) While that theory may be one of the reasons for applying the doctrine, and a factor in determining whether or not it should be available, it is a general test for characterizing, in the first instance, various situations

as justifying or not the invocation of the doctrine, and the main theory underlying the doctrine is that, because of the circumstances, there is a probability of negligence (see *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436]; *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614 [140 P.2d 369]), and the inference that flows therefrom is evidence in the case.

██ In regard to the situation where plaintiff wishes to rely upon the doctrine, assuming the case is otherwise a proper one for its application, but he nevertheless goes forward and endeavors to show specific particulars in which the defendant was negligent, there is also a diversity of opinion. It has been stated that if he proves *all* of the facts as to how the accident occurred, and the specific acts of negligence, he may not rely on the doctrine. (*Gritsch* v. *Pickwick Stages System*, 131 Cal. App. 774 [22 P.2d 554]; *Manuel* v. *Pacific Gas & Electric Co.*, 134 Cal.App. 512 [25 P.2d 509]; *Keller* v. *Pacific Tel. & Tel. Co.*, 2 Cal.App.2d 513 [38 P.2d 182]; *Davidson* v. *American Liquid Gas Corp.*, 32 Cal.App.2d 382 [89 P.2d 1103]; *Gorden* v. *Goldberg*, 3 Cal.App.2d 659 [40 P.2d 276]; *Jorgensen* v. *East Bay Transit Co.*, 46 Cal.App.2d 189 [115 P.2d 556]; *Connor* v. *Atchison. etc. Ry. Co.*, 189 Cal. 1 [207 P. 378, 22 A.L.R. 1462]; *Matthews* v. *Southern Pac. Co.*, 15 Cal.App.2d 36 [59 P.2d 220]; *Hall* v. *San Joaquin L. & P. Corp.*, 5 Cal. App.2d 755 [43 P.2d 856]; 93 A.L.R. 609.) Yet it has also been held, that the introduction of evidence as to how the accident happened, and the cause thereof, does not necessarily prevent the application of the doctrine. (See *Bruning* v. *Pacific Gas & Elec. Co.*, 140 Cal.App. 254 [35 P.2d 226]; *Chauvin* v. *Krupin*, 4 Cal.App.2d 322 [40 P.2d 904]; *Kilgore* v. *Brown*, 90 Cal.App. 555 [266 P. 297]; *Strock* v. *Pickwick Stages System*, 107 Cal.App. 298 [290 P. 482]; *Lippert* v. *Pacific Sugar Corp.*, 33 Cal.App. 198 [164 P. 810]; *Soto* v. *Spring Valley Water Co.*, 39 Cal.App. 187 [178 P. 305]; 93 A.L.R. 609.)

For example it is said in *Kilgore* v. *Brown, supra*, 559:

"Appellant relies on *Connor* v. *Atchison etc. Ry. Co.*, 189 Cal. 1 [26 A.L.R. 1462, 207 P. 378]. We do not read this case as authority for the position taken. The learned justice (Mr. Justice Wilbur) who wrote the opinion in that case states that a complete explanation of the cause of the accident was pleaded, and that 'the general rule is that where the plaintiff in his complaint gives the explanation of the cause of the accident, that is to say, where the plaintiff, instead of relying upon a general allegation of negligence, sets out specifically

the negligent acts or omissions complained of, the doctrine of res ipsa loquitur does not apply' (citing authorities). Later in the same opinion the justice says: 'In this case if the plaintiff had alleged negligence in general terms (and plaintiff did so in the instant case), and had merely proved the happening of the accident, a *prima facie* case would have been established under the *res ipsa loquitur* rule. But where the plaintiff went further and showed that the accident was caused by a cloudburst, the question of whether or not the defendant was negligent in failing to inspect the track was to be determined by the jury without reference to the *prima facie* case resulting from the mere happening of the accident. . . . However, where the explanation leaves it doubtful as to whether or not the ultimate cause of the injury is the negligence of the party charged, it is proper to instruct the jury as to the *res ipsa loquitur* doctrine.' We do not think this language can be taken as authority for the proposition that if the plaintiff, after a general allegation of negligence, explains the details of the case on the witness-stand so far as she knows them, and hits upon the cause of the accident, that this deprives the plaintiff of the *res ipsa loquitur* instruction to the jury. The fact that some testimony is offered which tends to show specific acts of negligence does not preclude the plaintiff from relying on the presumption.'' If, because of the circumstances of the case and the probabilities, an inference of negligence is raised, the doctrine should be applied, it is difficult to see why its application should be denied merely because plaintiff proves specific acts of negligence. There is no reason why such proof should wholly dispel the inference any more than it would in any other case. The plaintiff is penalized for going forward and making as specific a case of negligence as possible. If he endeavors to make such a case he runs the risk of losing the benefits of the doctrine to which the circumstances entitle him. Rather than place him in such a position he should be encouraged to prove as much as possible. The end result is not injurious to the defendant. He is not injured by the fact that the inference of negligence arose. The circumstances established a foundation therefore based upon probability. Indeed, he is in a better position as he has specific evidence to meet before the trier of fact that may be helpful to him. The case goes to the trier of fact with the general inference of negligence, plus other evidence of specific acts of negligence, to be weighed against defendant's showing. There is no reason

for applying a different test for determining when the inference is wholly dispelled as a matter of law in a case where res ipsa loquitur is applicable, than is used in the case of any other inference. The instances in which an inference is dispelled are rare (see *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Blank* v. *Coffin,* 20 Cal.2d 457 [126 P.2d 868]). Whatever the test may be, there is no occasion for a different one when considering the inference arising from the application of the doctrine of res ipsa loquitur. Hence, we conclude that evidence of specific acts of negligence does not deprive plaintiff of the benefit of the doctrine, unless the case is one where the inference would be dispelled as a matter of law under the same rules that apply in cases generally.

For the foregoing reasons the judgments are affirmed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

EDMONDS, J.—I cannot agree with the assumption made by Mr. Justice Carter that the motions of the railroad company to continue the trial of the two actions were denied upon the merits. The carrier contends that the adverse rulings were made solely because of the trial judge's conclusion that the Federal Employers' Liability Act (45 U.S.C.A., § 51 et seq.) required the court to accept jurisdiction and proceed with the trials regardless of any prejudice suffered by the employer as the result of its inability to produce witnesses without impairing the war effort. The plaintiffs do not claim that the rulings were made upon the merits, nor do they challenge the railroad company's statements to the contrary.

The motions were made upon the grounds, generally stated, that it was prejudiced by the absence of witnessses who could not then be produced without serious interference with the war effort, and that the trial of the cases on the date then set would place an undue burden upon interstate business. Facts tending to support the company's position were presented by means of three affidavits which included various data concerning the carrier's wartime activities. The plaintiffs filed no affidavits challenging these facts. They have maintained a consistent position that the facts stated by the railroad company are quite immaterial and that the court was without

authority to grant the motions unless the employer "had an absolute right to abate the California proceedings." (Resp. Brief, p. 21.)

In further explanation of what occurred in the trial court at the time the motions were made, the company states: "The motions to abate and the motions for continuance were not based primarily on the Oregon decrees, but were rather addressed to the discretion of the trial court. The trial court erroneously interpreted the Miles case and decided that it had no power to abate or continue the California proceedings no matter what equitable considerations might exist. It was that erroneous view which led the trial court to make orders which appellant contends constituted an abuse of the trial court's discretionary powers, entirely without any consideration of the validity or effect of the Oregon decrees. As has been pointed out, it was decided by the United States Supreme Court in *Douglas* v. *N. Y., N. H. & H. R. Co.*, 279 U.S. 377 [49 S.Ct. 355]; 73 L.Ed. 747, and again in the Miles case (*Miles* v. *Ill. Central R. R. Co.*, 315 U.S. 698 [62 S.Ct. 827]; 86 L.Ed. 1129) that the Federal Employers' Liability Act does not require state courts to entertain jurisdiction of suits arising under it, where the litigants are non-residents, and the cause of action arose elsewhere. Therefore, contrary to the trial court's impression, it was the duty of the trial court to consider the equities of the case and to determine whether under all the circumstances the California court should assume jurisdiction."

The decisions of the Supreme Court of the United States do not compel the conclusion that a state court is powerless to refuse jurisdiction of any action brought under the Federal Employers' Liability Act (45 U.S.C.A., § 51). On the contrary, in its most recent interpretation of that legislation, five members of the court were of the view that the venue provision (section 6) does not compel a state to open its forums to all cases arising under the statute under all circumstances. (*Miles* v. *Illinois Central R. R. Co., supra.*) And consistent with that view are a number of prior decisions. *McKnett* v. *St. Louis & S. F. Ry. Co.*, 292 U.S. 230 [54 S.Ct. 690, 78 L.Ed. 1227]; *Denver & Rio Grande W. R. R. Co.* v. *Terte*, 284 U.S. 284 [52 S.Ct. 152, 76 L.Ed. 295]; *Douglas* v. *New York, New Haven & Hartford R. R. Co.*, 279 U.S. 377 [49 S.Ct. 355, 73 L.Ed. 747]; *Michigan Cent. R. R. Co.* v. *Mix*, 278 U.S. 492 [40

S.Ct. 207, 73 L.Ed. 470] ; *Hoffman* v. *Missouri ex rel. Foraker,* 274 U.S. 21 [71 S.Ct. 905, 47 L.Ed. 485] ; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Wells,* 265 U.S. 101 [44 S.Ct. 469, 68 L.Ed. 928] ; *Davis* v. *Farmers' Co-operative Equity Co.,* 262 U.S. 312 [43 S.Ct. 556, 67 L.Ed. 996].)

In the Miles case, Justices Frankfurter, Roberts, Byrnes' and Chief Justice Stone were of the opinion that "section 6 did not give the states compulsive jurisdiction," and Justice Jackson, in sharing that view, stated: "It is very doubtful if any requirement can be spelled out of the Federal Constitution that a state must furnish a forum for a non-resident plaintiff and a foreign corporation to fight out issues imported from another state where the cause of action arose." Under this construction of the statute, it was the duty of the trial judge in the present litigation to hear and determine, upon the merits, the railroad company's motions for a continuance, exercising a sound discretion as to whether, upon the facts presented, the trials of the two actions should be continued for either an indefinite or a stated period.

In my opinion, therefore, the judgments should be reversed with directions to the trial court to proceed accordingly.

Curtis, J., and Shenk, J., concurred.

Appellant's petition for a rehearing was denied January 25, 1945. Shenk, J., Edmonds, J., and Spence, J., voted for a rehearing.