WOOD, Appellant, vs. INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Respondent.

*April 5—May 1, 1956.*

For the appellant there was a brief by *Earl L. Kennedy* of Rhinelander, and *Harry Primakow* of Milwaukee, and oral argument by *Mr. Kennedy*.

For the respondent there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *John F. O'Melia.*

CURRIE, J. The sole issue on this appeal is whether the rule of *res ipsa loquitur* could properly be invoked by the plaintiff under the facts surrounding the accident on the issue of Mr. Wood's negligence. Unless the jury is permitted to infer negligence from the occurrence of the accident itself under the doctrine of *res ipsa loquitur,* there is no other evidence in the record which would support a finding of causal negligence with respect to Mr. Wood's operation of the jeep. The learned trial court concluded that this was not a proper case to apply the principle of *res ipsa loquitur* because "it is just as likely, and probably more likely, that something else other than negligence in respect to the management and control of the vehicle was responsible for this very unfortunate accident."

In order to properly evaluate the hypotheses, other than the negligence of the driver, advanced by counsel for the defendant to explain the occurrence of the accident, further surrounding facts should be stated.

The day before both the plaintiff and Mr. Wood spent all of the day getting their Thiensville, Wisconsin, home ready for their departure, caring for the lawn and loading the jeep and trailer, preparatory to a summer stay in Vilas county. They did all of the work themselves without outside help. That evening Mr. and Mrs. Wood drove to Milwaukee and attended a boxing match which concluded about 10:30 p. m. They then went to a party at the Schroeder Hotel staying until midnight, after which they drove back to Thiensville, which took twenty to thirty minutes, and went to bed.

The next morning they arose about 5 or 5:30 a. m. They had but four-and-a-half or five hours' sleep. They then made beds, prepared breakfast, and departed on the fateful journey

north. The Woods made but two stops between the time they left their Thiensville home and the occurrence of the accident. The first stop was made at Clintonville in order to permit their two dogs to run, and lasted ten or fifteen minutes. The second stop occurred at Wittenberg for gasoline. After leaving Wittenberg Mrs. Wood leaned against a pillow in the front seat of the jeep and fell asleep because she was tired. The next thing that she remembers is that she heard a lot of stones hitting the bottom of the car. She came to with a start and observed that Mr. Wood was doing something with his feet, but what he was doing with his feet she does not know. She knows that there was a lot of commotion and she could see his hands on the steering wheel, and his head was up. She remembers nothing more about the accident until she woke up in the hospital at Rhinelander with a great deal of pain.

There was no curve in the highway at the point where the jeep ran off the pavement. The distance from where the jeep left the east side of the pavement to its rear wheels, at the point where it had stopped as a result of striking the two trees, was 226 feet, but such vehicle at that point was only 31 feet from the pavement. The right front wheel of the jeep had departed from the pavement some 40 or more feet back from the point where the entire vehicle left the pavement. The gravel shoulder was hard and suitable for travel. All of these facts demonstrate that there was no sudden swerving off the highway.

The tracks left by the jeep and the trailer ran in a straight direction from the point where they left the pavement, and there was nothing in the tracks to indicate the application of brakes. The slope of the outer side of the ditch lying beyond the highway shoulder was gradual.

This court in *Wisconsin Telephone Co. v. Matson* (1950), 256 Wis. 304, 41 N. W. (2d) 268, held that the rule of *res ipsa loquitur* was applicable in a case where a motor truck

departed from the traveled portion of a highway and struck a telephone pole, in the absence of any explanation by the driver of how the accident happened. The gist of the holding in that case is well stated in syllabus 2 as follows:

"Where the thing causing injury is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

For a more-recent case in which this same principle was applied, see *Schimke v. Mutual Automobile Ins. Co.* (1954), 266 Wis. 517, 64 N. W. (2d) 195.

Counsel for the defendant contend that in the instant case the evidence is stronger in support of the theory that Mr. Wood sustained a serious heart seizure just prior to the deviation of the jeep from the highway than the hypothesis that he negligently fell asleep while driving. Emphasis is laid on the facts that the wheel tracks ran perfectly straight from the pavement to the two trees and that there was no evidence of application of brakes. The following testimony by Mrs. Wood is also urged as supporting the theory of a heart attack:

"*Q.* And then what happened? *A.* Well, I come to with a start. I don't know just what happened. I don't remember too much. But I know I could,—all now that's in my mind is just trees. I know I seen the trees, and that's all. But I picture Mr. Wood as stiffening out, doing something with his feet, but what he was doing with his feet I don't know.
"*Q.* Where did you see him do that? *A.* Well, after I raised up when we hit the gravel.
"*Q.* After you heard the gravel? *A.* Yes."

One witness after the accident who inspected Mr. Wood's body testified that Mr. Wood's face was grayish blue in color.

On the other hand, there was a complete absence of any medical testimony that Mr. Wood had undergone a heart attack. At the time of his death Mr. Wood was fifty-five years of age and the record is wholly silent as to his ever having had a prior heart attack or other illness. Dr. Theige, a physician practicing at Three Lakes, was called to the scene of the accident shortly after it occurred and examined the body of the deceased. He made out a death certificate in which he stated that Mr. Wood had died as the result of the automobile accident. At the trial, Dr. Theige gave it as his opinion that Mr. Wood's death was due to the accident. The undertaker who embalmed the body testified that Mr. Wood's face had been badly bruised, scratched, and cut and that there was a black-and-blue mark on the chest just above the heart.

In an attempt to impeach Dr. Theige's testimony, counsel for the defendant called to the stand a deputy sheriff who testified that Dr. Theige had stated to such witness that Mr. Wood had died of a coronary thrombosis. While such testimony of the deputy sheriff as to such statement alleged to have been made by Dr. Theige was admissible for the purpose of impeaching Dr. Theige's prior testimony, such testimony did not constitute substantive evidence as to the cause of death and has no probative value on such issue. *Hamilton v. Reinemann* (1940), 233 Wis. 572, 578, 290 N. W. 194.

Counsel for the defendant strongly rely upon the following statement appearing in our opinion in *Wisconsin Telephone Co. v. Matson, supra* (p. 311):

"The jury may not guess that an actionable cause rather than one not actionable produced the accident *when the possible nonactionable cause is present in the evidence of the circumstances,* but when the nonactionable cause is present only in the imagination the question of speculation between the two or more possible causes does not arise." (Emphasis supplied.)

This brings us to the crucial question of the case: Must the evidence establish as a certainty the presence of a non-actionable cause for the vehicle departing from the paved portion of the highway, or is circumstantial evidence from which a nonactionable cause for such happening reasonably may be inferred sufficient, in order to render inapplicable the rule of *res ipsa loquitur*?

Prosser, Law of Torts (2d ed.), p. 216, sec. 43, footnote 20, in discussing the sufficiency of evidence necessary to rebut the inference of negligence raised by the application of the rule of *res ipsa loquitur*, states:

"But the mere introduction of *inconclusive* evidence suggesting another cause will not entitle the defendant to a directed verdict." (Emphasis supplied.)

In support of such stated principle the author cites *Manuel v. Pacific G. & E. Co.* (1933), 134 Cal. App. 512, 25 Pac. (2d) 509, and *Glowacki v. North Western Ohio R & P. Co.* (1927), 116 Ohio St. 451, 157 N. E. 21, 53 A. L. R. 1486. In those two cases, live electric wires installed by the defendant power companies broke causing injuries, and the issue was whether there was sufficient evidence of the defendants' negligence to go to the jury. The defendants in both cases urged, as a possible cause of the breaking of the wires, the shooting of bullets from a gun so as to strike and break the wires. We quote from the opinion of the California court of appeals in the first-cited case as follows (134 Cal. App. 517, 25 Pac. (2d) 511):

"As to the law, we believe this to be a case for the application of the rule [of *res ipsa loquitur*], and as to the facts the jury were apparently not convinced by the theory of the break of appellant, and whether the break was due to the impact of the rifle bullet or to kinks in the line put in when the cable was strung or to a blow from an unknown tool, or to some other unexplained cause, was for them to determine."

Invoking the rule of *res ipsa loquitur* does no more than permit a jury to base its finding of causal negligence upon circumstantial evidence. In view of this, we deem the following statement appearing in the opinion of the United States supreme court in *Tennant v. Peoria & P. U. R. Co.* (1944), 321 U. S. 29, 35, 64 Sup. Ct. 409, 88 L. Ed. 520, to be particularly pertinent to the issue with which we are confronted on this appeal:

"It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. . . . It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable."

We do not consider that the facts in the instant case bring it within the rule laid down in *Baars v. Benda* (1946), 249 Wis. 65, 23 N. W. (2d) 477. In that case a car suddenly left the highway and it was later discovered that the steering apparatus of the vehicle was broken. The court held that a jury should not be permitted to speculate as to whether such steering mechanism broke before the car left the highway or was the result of the impact caused by the vehicle running into a snowbank. In order for the facts in the instant case to have paralleled those in *Baars v. Benda,* it would be necessary for the defendant to have produced conclusive testimony that Mr. Wood had sustained a heart attack at the time of the accident. If such conclusive testimony had been produced it would not have been essential for the defendant to establish that the heart attack occurred before the jeep left the highway in order to render inappli-

cable the rule of *res ipsa loquitur*. Certainly the evidence produced at the instant trial falls far short of establishing as a certainty that Mr. Wood did sustain a heart attack at any time.

Defendant's brief suggests the possibility of other non-actionable causes for the jeep having departed from the traveled portion of the highway besides that of a heart attack. However, none are established by the evidence as a certainty but all are dependent for proof on inferences to be drawn from circumstantial evidence.

We are constrained to hold that in a situation where it ordinarily would be permissible to invoke the rule of *res ipsa loquitur,* such as the unexplained departure from the traveled portion of the highway by a motor vehicle, resort to such rule is not rendered improper merely by the introduction of inconclusive evidence giving rise to an inference that such departure may have been due to something other than the negligence of the operator.

As a final argument for sustaining the judgment below, counsel for the defendant argue that, if Mr. Wood did negligently fall asleep, the plaintiff wife assumed such risk as a matter of law. We cannot agree but deem that such issue of assumption of risk is one which must be resolved by the jury.

*By the Court.*—Judgment reversed, and cause remanded for a new trial consistent with this opinion.

STEINLE, J. (*dissenting*). The maxim of *res ipsa loquitur* does not apply where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence. *Loomis v. Toledo R. & L. Co.* (1923), 107 Ohio St. 161, 140 N. E. 639.

In *Hyer v. Janesville* (1898), 101 Wis. 371, 377, 77 N. W. 729, when considering the application of the rule of *res ipsa loquitur,* this court said that:

". . . where there is no direct evidence of how an accident occurred, and the circumstances are clearly as consistent with the theory that it may be ascribed to a cause not actionable as to a cause that is actionable, it is not within the proper province of a jury to guess where the truth lies and make that the foundation for a verdict."

The same principle was sustained in *Klein v. Beeten* (1919), 169 Wis. 385, 172 N. W. 736, and *Baars v. Benda* (1946), 249 Wis. 65, 23 N. W. (2d) 477. In *Klein v. Beeten* it was said, that while inference allowed by the doctrine of *res ipsa loquitur* constituted proof of negligence, it is only where the circumstances leave no room for a different presumption that the maxim applies.

The principle was also recognized in *Wisconsin Telephone Co. v. Matson* (1950), 256 Wis. 304, 311, 41 N. W. (2d) 268, where it was observed that:

"The jury may not guess that an actionable cause rather than one not actionable produced the accident when the possible nonactionable cause is present in the evidence of the circumstances, . . ."

It appears to me that in the instant matter a most reasonable inference may be drawn from the evidence that a nonactionable cause—real and not imaginative—may have precipitated the untoward result. In his decision the trial court expressed a view, in which I concur. He said:

"I think the explanation is very clear here that any person who was conscious would not have operated an automobile 250 [actually more than 270] feet [off the road and up the embankment] without making some effort to try to control its course."

There is no dispute in the evidence that the jeep and the trailer after leaving the black-top, traveled in a straight line without deviation, only one set of tracks being made, the trailer wheels tracking the jeep wheels exactly, and without

any effort on the part of the operator to slow, stop, or turn the vehicles in order to attempt to avoid striking the trees. The evidence further indicates that while the vehicles were traveling off the road and up the embankment, the operator, although moving his feet in an undescribed manner, actually "stiffened out." The only reasonable inference to be deduced from that evidence is that the operator had in some manner become physically incapacitated or disabled, and that he was thereby prevented from exercising reasonable care and caution for the protection of himself, his wife, and property,— a nonactionable cause of the collision. It seems to me that any alive, conscious driver would have taken some means to avoid the collision. The evidence indicates that the driver was an experienced operator of automobiles and airplanes. This evidence is not inconclusive but is sufficient to have entitled the court to infer that the operator was disabled or incapacitated.

As to the fire in the seat cushion it may be asked: When did it start, before or after the crash? Was it not possibly a cause of the crash? In *Wisconsin Telephone Co. v. Matson, supra,* the court said (p. 311):

"Counsel has suggested that the driver of the Matson truck may have been forced into the telephone pole by another car or perhaps a man stepped in front of the truck causing him to swerve. This will not do unless it is shown that there was such other truck or man. Until then the circumstances are not consistent with any theory save negligent operation."

That the seat cushion was on fire is a fact. It is not an imaginative item. Although the presence of the fire may have been a result of the crash, nevertheless, for the reason that it can reasonably be inferred that the fire was an efficient factor in causing the crash, the *res ipsa loquitur* rule is not applicable.

A finding of negligence by a jury under facts as here, could only be based on conjecture. Since there is no direct evidence

of negligence, and since the rule of *res ipsa loquitur* is not applicable for the reason that there is evidence of record from which it may be reasonably inferred that the accident was due to a cause other than an act or acts of negligence on the part of the operator of the jeep, I am of the opinion that the court's order in directing the verdict was proper, and I must, therefore, respectfully dissent from the determination by the majority of the court.

I am authorized to state that Mr. Chief Justice FAIRCHILD joins in this dissent.